SUSAN K. GRISWOLD *v.* ALLEN C. SAWYER et al., as Administrators, etc., Respondents, et al., Appellants.

While the strict, technical meaning of the words "legal representatives" is administrators or executors, and they must be so construed in the absence of anything showing a different intent; as they are not always used in this sense, it is the province of construction in any case to ascertain the sense in which they were used, and for that purpose the subject-matter, and the surrounding circumstances, as well as the language used may be considered.

By a paid-up policy of insurance upon the life of G., issued in consideration of the surrender of a prior policy, the sum insured was made payable "to his legal representatives." It appeared that at the time the policy was issued, G., who was an old man, had a wife and seven children dependent upon him; that he had recently been reduced from large wealth to insolvency. There was no proof for whose benefit the surrendered policy had been issued. In an action to determine as to whether the widow and children of G. or his administrators were entitled to the sum insured, *held,* that the former were so entitled; that, where in such a policy, it is the intention that its avails shall descend and be used as common assets, the invariable language is to "pay to the said assured, his executors, administrators or assigns," and that the use instead of the words "legal representatives," under the circumstances, clearly imported an intent that the money should go for the benefit of the heirs and next of kin of the assured; also that as G.'s creditors in his life-time did not take or claim the benefit of the original or the paid-up policy, the reasonable inference was that the former was for the benefit of his family, and that the latter was intended to take its place.

*Griswold* v. *Sawyer* (56 Hun, 12), reversed.

. (Argued January 19, 1891; decided January 27, 1891.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made November 26,

1889, which reversed a judgment in favor of plaintiff and some of the defendants entered upon the report of a referee and granted a new trial.

This is an action to determine the rights of the parties to the proceeds of a policy of life insurance.

The facts, so far as material, are stated in the opinion.

*Charles G. Davis* for appellants. All the opposition to the children's claims to this life insurance money is based upon the unnatural meaning which is sought to be given to the term "legal representatives," and this court is asked to say that that expression should, in the light of all the evidence and surrounding circumstances, be construed to mean, not his wife nor his children, but creditors. (*Greenwood* v. *Holbrook,* 111 N. Y. 465 ; 2 Edm. Stat. [2d ed.] 99, § 75 ; *Bishop* v. *Grand Lodge,* 112 N. Y. 627 ; *Lee* v. *Dill,* 39 Barb. 516 ; *Drake* v. *Pill,* 3 Edw. Ch. 252.) In cases of wills, if there is a misdescription, misnomer, or an ambiguity or uncertainty as to the name of the legatee or devisee, evidence aliunde may be received to ascertain the beneficiary intended by the testator. (*Lefevre* v. *Lefevre,* 59 N. Y. 434.)

*Otis A. Dennis* for respondents. The question to be considered upon this appeal is whether the record discloses an error of law justifying an order granting a new trial, whether noticed by the General Term or not. (*Mackey* v. *Lewis,* 73 N. Y. 382 ; *Foster* v. *Persch,* 68 id. 400 ; *Comstock* v. *Ames,* 3 Keyes, 357–359 ; *Overlander* v. *Spies,* 45 N. Y. 175 ; *Armstrong* v. *DuBois,* 90 id. 95.) The ordinary meaning of the term "legal representatives" is executors or administrators. It must be understood in its ordinary sense, unless the context indicates it was used in a peculiar sense. (May on Ins. § 173 ; Greenl. on Ex. § 278 ; Woerner on Administration, 906 ; *Cox* v. *Curwen,* 118 Mass. 198.) The referee erred in admitting extrinsic evidence to explain the term "legal representatives." (*Home* v. *M. S. Ins. Co.,* 1 Sandf. 137 ; *A. Ins. Co.* v. *Eddy,* 49 Ill. 196 ; *Herman* v. *Ins. Co.,* 81 N. Y. 148–188 ; May on Ins. § 173 ; Greenl. on Ev. § 278 ;

*Tuxley* v. *N. A. Ins. Co.*, 25 Wend. 374 ; *Pohalski* v. *M. L. Ins. Co.*, 4 J. & S. 252 ; 40 Barb. 119 ; *In re Hall*, 2 Dem. 112 ; *Slauson* v. *Lynch*, 43 Barb. 147 ; *Halsey* v. *Paterson*, 37 N. J. Eq. 445 ; *Cox* v. *Curwen*, 118 Mass. 198 ; *Godfrey* v. *Moser*, 66 N. Y. 250.)

EARL, J.   On the 25th day of July, 1879, the Connecticut Mutual Life Insurance Company, in consideration of the surrender of a prior policy, issued a paid-up policy to Alfred H. Griswold, insuring his life for the sum of $2,453, payable " to his legal representatives ninety days after due notice and satisfactory evidence " of his death.   He died December 26, 1888, and the insurance company has paid the amount insured into court.   The widow and children claim it as legal representatives, and the administrators of the insured claim it.   The cause was referred to a referee, who decided that the sum was payable to the widow and children, and judgment was entered to that effect.   From that judgment the administrators appealed to the General Term, and there it was held that the sum was payable to them, and the judgment was reversed and a new trial granted, and then this appeal was brought to this court.

The sole matter for our determination is the meaning of the words " legal representatives," as used in the policy.   It is undoubtedly true that the strict, technical, *prima facie* meaning of these words is administrators or executors, and that they must always have that meaning unless it can be seen that they were used in a different sense.   That these words have sometimes been used in statutes and decisions in a different sense cannot be doubted.   (2 R. S. 96, § 75 ; *Lee* v. *Dill*, 39 Barb. 516, 521 ; *Drake* v. *Pell*, 3 Edw. Ch. 266, 286 ; *Greenwood* v. *Holbrook*, 111 N. Y. 465. ; *In re Hall*, 2 Dem. 112 ; *Coster* v. *Butler*, 63 How. Pr. 311 ; 2 Redfield on Wills, 78 ; Woerner on Administration, 906 ; *Cox* v. *Curwen*, 118 Mass. 196 ; *Farnam* v. *Farnam*, 53 Conn. 262 ; *Davis* v. *Davis*, 55 id. 319 ; *Halsey* v. *Paterson*, 37 N. J. Eq. 445 ; *Warnecke* v. *Lembca*, 71 Ill. 91 ; *Loos* v. *John Hancock Mutual Life Ins. Co.*, 41

Mo. 538.) In *Warnecke* v. *Lembca* it was held that the phrase
" legal representatives," in the commonly accepted sense,
means the administrators or executors, but that this is not the
only definition; that it may mean heirs, next of kin or
descendants, and sometimes assignee or grantee; that the sense
in which the term is to be understood depends somewhat upon
the intention of the parties using it, and it is to be gathered,
not always from the instrument itself, but as well from the sur-
rounding circumstances. In *Loos* v. *John Hancock Mutual
Life Ins. Co.*, the court was dealing with the word " represent-
atives" used in a life policy, and it said: "Legal representatives
and personal representatives, in the general or professional sense,
mean simply executors or administrators. Although this is
the primary, legal meaning, they are often construed differently
if it is clear that the intention was to vest the estate in a dif-
ferent class of persons. That they mean executors and admin-
istrators will ordinarily be taken as true, where nothing is
shown to raise a counter presumption. But the meaning is
not so inflexibly attached as to prevail in all cases where it is
manifest that another disposition was intended. The intention
must control, and that intention is to be gathered by a view of
the context, subject-matter and the purpose to be attained.
The words have, therefore, been held to mean next of kin
when the circumstances of the case made it apparent that such
a construction would effectuate the object had in view. The
language used by the assured would seem to indicate that it
was his intention, in case of his untimely decease, to make
some provision for the surviving members of his family, and
not that the money arising from the policy should go to his
executors or administrators to be administered on as ordinary
assets. Policies for a term of life insurance of this description
are of frequent occurrence, and where it is meant that the
money resulting from the policy shall descend and be used as
common assets, the invariable language is, "to pay to the said
assured, his executors, administrators or assigns." The chang-
ing of the language and using terms of different expression
clearly import that the money was intended for the benefit of

his heirs or next of kin, and that it was not to be adminis-
tered on as assets by the executor or administrator.

Thus, as these words are not always used in the same sense,
it is the province of construction in any case to ascertain the
sense in which they were used, and for this purpose the sub-
ject-matter, the surrounding circumstances as well as the lan-
guage used may be considered.   Such is the general rule for the
construction of doubtful phraseology in all written instruments.

The general purpose of life insurance is to make provision
for the family or other relatives or dependents of the insured,
and in the vast majority of cases it is resorted to for that pur-
pose, and it is most probable here that the insured was actu-
ated by that purpose.   He left a widow and some children
who, at the date of the policy, were dependent upon him for
support.   He had then recently become insolvent and had been
reduced from large wealth to poverty, and he was unable to
pay his debts.   It cannot be supposed that he effected this
insurance for the purpose of devoting the comparatively small
sum to the payment of his large indebtedness to his numerous
creditors, leaving his family poor and dependent.   It is more
natural to suppose that he was then in his old age more solicit-
ous to make some small provision for his family.   While there
is no proof for whose benefit the surrendered policy had been
issued, as his creditors did not in his life-time take or claim
that or this policy, it is a reasonable inference that the prior
policy was for the benefit of his family, and that the new
paid-up policy was intended to take its place.

Mr. Griswold was not a lawyer, and hence cannot be sup-
posed to have used these words in their strict, technical, legal
sense, but it is reasonable to suppose that he used them in the
general sense in which they are frequently used and generally
understood by laymen.   If he had formed a scheme in his
mind to give this sum to his creditors, or to his executors or
administrators, it is reasonable to suppose that he would have
used other and what to him would seem plainer and more appro-
priate and direct words to express his meaning.   It is not so
important to inquire what the insurance company meant by

these words, as it was wholly indifferent to it whether the sum insured was made payable to the executors, administrators or assigns of the insured or to his family. The beneficiaries were such as the insured intended and mentioned to the company, and it is a just inference that he furnished or selected the language used to designate them. But it is quite significant, as indicating the intent of the company, that the words ordinarily found in policies where the sum insured is intended to be made payable to the executors or administrators of the insured for general administration, are not found in this policy, and the changed phraseology may be taken to indicate a different understanding on the part of the company. The word " assigns" which is usually found in policies which are assignable by the insured, is also omitted from this policy, indicating that the parties did not understand that they were dealing with an assignable policy.

It is elementary law that where a policy is for the benefit of persons named therein to whom the sum insured is payable, it cannot be assigned without the consent of the persons named and all of them. The insured may destroy the policy by omitting to pay the premiums and thus failing to keep it in life, but he cannot impair the interests of the persons named as beneficiaries by a surrender or assignment thereof. It is, therefore, begging the question to say that the insured could undoubtedly in his life-time have assigned this policy and thus deprived his family of the benefit thereof. If we are right in the meaning we attribute to these words, he could not have done so.

It may be asked if he meant the insurance as a provision for his family, why did he not have their names inserted as beneficiaries ? There was a wife and seven children, and he found the words " legal representatives " in the printed form of the policy preceded by a blank, and he probably took these words as expressive of his meaning rather than have the numerous names written in the policy.

If this insurance was for the benefit of the general estate of the insured and payable after his death to his administrators for

general administration by them, then the insured could have assigned it in his life-time, and as a chose in action it would have been liable to be taken by his creditors. Can it be supposed that this old man with a family somewhat dependent upon him, intended to take a paid-up policy which his creditors could at once seize and take away from him under their judgments? If he had not intended to benefit his family and had desired some present benefit for himself, he could probably have obtained from the company the present value of the policy in cash, and thus have appropriated it to his use.

So, in whatever light we consider this matter, it is most probable that it was the intention to make the sum insured payable to the family of the insured. We cannot be absolutely certain that such was the intention, but we must adopt that construction which has in its favor the balance of probabilities.

It is said that this is not a safe construction of these words, and that insurance companies in accepting surrenders of policies and persons who take assignments of them may be deceived, and accept surrenders and assignments which are inoperative against the real beneficiaries. But the answer to this suggestion is that persons who deal in policies payable like this "to legal representatives," words known to be of doubtful meaning, must be sure of the intention of the parties to the policy, and if they are not, they must not deal in them ; and where they do deal in them they act at their peril as all persons do who deal in written instruments of doubtful phraseology. It would be a poor administration of justice in this case, where no fraud has been committed, to defeat the intention of the parties for fear that in some other case some incautious person may be deceived by these words of uncertain import.

It was competent to prove the circumstances surrounding the insured at the time he took the policy as bearing upon the construction thereof. There was no dispute about them, and it was not needful that the referee should expressly find them. He could consider them in construing the policy, and so can we.

It is not needful now to determine whether these words include the widow as well as the children, as the administrators have no interest in that question, and the children seem willing that she should share with them in the fund.

Our conclusion, therefore, is that the order of the General Term should be reversed and the judgment entered upon the report of the referee affirmed, with costs.

All concur, except ANDREWS, and GRAY, JJ., dissenting ; PECKHAM, J., concurring in result.

Order reversed and judgment on report of referee affirmed.