NEW YORK LIFE INSURANCE COMPANY, Plaintiff, v. KANSAS CITY BANK of Kansas City, Mo., et al., Interpleaders and Appellants; ALBERT YOUNG, Administrator, et al., Interpleaders and Respondents; HARRIET L. CHITTENDEN et al., Interpleaders.

Kansas City Court of Appeals, October 1 and November 5, 1906.

1. LIFE INSURANCE: Legal Representatives: Executors: Next of Kin. The words, legal representatives, in their general acceptation, mean executors and administrators but not always, as they may mean next of kin or assignees as may appear from the connection and intentions of the parties.

2. ———: ———: ———: ———. A policy of life insurance is construed and the words, legal representatives, are held to mean executors or administrators.

3. ———: ———: ———: ———. Although the words were used in a printed form, the assured is presumed to have read and construed the meaning of the words in their general sense.

4. ———: ———: ———: Transfer. The language is further held to indicate that it was intended to make the policy assignable.

5. ———: ———: ———: ———: Evidence. It is further held that there is sufficient evidence to show the assignment of the policy.

6. ———: Collateral Security: Evidence. Held, further, the evidence shows that a bank held certain policies as collateral securities for the assured's note.

7. ———: ———: Limitations: Statute. The fact that the note is barred by the Statute of Limitations will not defeat a bank's right to hold a policy of insurance as collateral security for the debt, since section 4276, Revised Statutes 1899, is not broad enough to cover such transaction.

Insurance Co. v. Kansas City Bank.

8. ———: ———: **True Owner of Policy: Trusts and Trustees.** A bank holding a note with life insurance policies as collateral, that had ceased to do business for years, is a defunct corporation and cannot claim a policy held as collateral security for note owned by it when a going concern, nor can a shareholder in such bank maintain an action for such policy, nor can a pledgee transfer a pledge without the pledgor's consent; but the surviving director and trustee of the defunct bank may recover such policy as trustee for shareholders.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED AND JUDGMENT DIRECTED.

*Gage, Ladd & Small* for appellants.

(1) The policies were assignable. Insurance Co. v. Flack, 3 Md. 341; Insurance Co. v. Armstrong, 117 U. S. 591; Bank v. Abernathy, 32 Mo. App. 211. (2) The execution of the assignment and note and ownership of the policies by the bank were abundantly proved. Davis v. Wood, 161 Mo. 17; Shaw v. Persing, 57 Mo. 416; Greenleaf on Evidence (16 Ed.), p. 170; Settle v. Alison, 8 Ga. 201; Bill v. McCaulley, 29 Ga. 355; Gardner v. Grannis, 57 Ga. 539; Cahill v. Palmer, 45 N. Y. 478. (3) The burden was upon the respondents to show the amount of the debt for which the policies were held as collateral, if there could be any doubt about that, for the reason that the assignment expresses on its face to be absolute and for value received. (4) Possession by bank was prima facie evidence of ownership of policies. Conway v. Caswell, 48 S. E. 956. (5) The statute of limitations has not run against appellants. Conway v. Casswell (Ga.), 48 S. E. 956; Jones on Pledges, sec. 582, and cases cited; Handcock v. Ins. Co., 114 Mass. 155; 19 Am. and Eng. Ency. Law (2 Ed.), p. 177, and many cases cited. (6) The corporate existence of the Kansas City National Bank has not expired. Bank v. Ins. Co., 104 U. S. 54; Cogswell v. Bank, 56 Atl. 574;

s. c., 76 Conn. 252. (7) If the bank could not maintain the suit, then the judgment ought to be in favor of the interpleader, McCoun or Chick for himself and the other stockholders, or Chick surviving director and trustee of the bank. Conway v. Casswell (Ga.), 48 S. E. 956.

*Frank Titus* and *T. B. Wallace* for respondent.

(1) The laws of New York are to be considered as parts of these policies in determining who are the beneficiaries meant by the term "legal representatives." Griswold v. Sawyer, 125 N. Y. 411; Ruppert v. Ins. Co., 7 Roberts (N. Y.) 155. (2) The laws of the State of Indiana, introduced in evidence, as well as the following decisions of that State, demonstrate that the words "legal representatives" there means the heirs of the insured, and not persons in the attitude of the adverse claimants herein. Hutson v. Merefield, 51 Ind. 24; Ewing v. Jones, 130 Ind. 247; Wilburn v. Wilburn, 83 Ind. 55. And to like effect is the law in Missouri as well as in other States. In re Riesenberg Estate, 90 S. W. 1170; Loos v. Ins. Co., 41 Mo. 538; Elstroth v. Young, 83 Mo. App. 258; Pietri v. Sequenot, 96 Mo. App. 266; Ewing v. Shanahan, 113 Mo. 194; Casualty Co. v. Kacer, 169 Mo. 305; Bick v. Tanzy, 181 Mo. 515; Hubbard v. Turner, 93 Ga. 752; Rose v. Wortham, 95 Tenn. 505; Gaugh v. St. Louis Co., 88 Ill. 251; In re Conrad, 89 Iowa 396; Miller v. Metcalf, 77 Conn. 176; Staples v. Lewis, 71 Conn. 288; Knights Templar v. Greene, 79 Fed. Rep. 461. (3) That the law of the State of New York, in which the policies in question were issued, and the law of the State of Indiana, in which the policies were delivered, enter into and become a part of the contract, and are to be considered in construing the meaning of any clause or provision therein, is declared by the following Missouri authorities: Johnson v. Gattry, 11 Mo. App. 330, 83 Mo. 339; Pietri v. Seguenot, 96

121 App—31

Mo. App. 258; Cravens v. Ins. Co., 148 Mo. 604, 178 U. S. 389; Daggs v. Ins. Co., 136 Mo. 398. The above case affirmed in 172 U. S. 557; Christian v. Ins. Co., 143 Mo. 465; Ins. Co. v. Clements, 140 U. S. 226; Hicks v. Ins. Co., 60 Fed. 690; Supreme Lodge v. Meyer, 198 U. S. 508. (4) The alleged assignment, even if proved to have been executed by the insured Horace N. Chittenden in his lifetime, which facts is unproved, would be insufficient under the law of the States of New York and of Indiana entering into these policies to pass the title or annul the rights of the wife and child, the widow and heir of Mr. Chittenden, to the fund created by said policies; the interest and rights of said beneficiaries having accrued forthwith upon the delivery of said policies in Indiana. The law of Missouri is in accord with that of New York and Indiana. Anderson v. Goldsmidt, 103 N. Y. 617; Barry v. Assurance Society, 59 N. Y. 587; Ruppert v. Ins. Co., 7 Robertson (N. Y.) 155; Sherman v. Atchison, 77 App. Div. (N. Y.) 49. This case was affirmed in Court of Appeals, 177 N. Y. 574, 1131; Fowler v. Butterly, 78 N. Y. 68; Butler v. Ins. Co., 55 Hun (N. Y.) 301; Garner v. Life Ins. Co., 110 N. Y. 266; Barnett v. Ins. Co., 86 N. Y. Supp. 842; Griswold v. Sawyer, 125 N. Y. 411; Ins. Co. v. Hazzard, 41 Ind. 116; Hutson v. Merefield, 51 Ind. 24; Pence v. Makepeace, 65 Ind. 345; Wilburn v. Wilburn, 83 Ind. 55; Assurance Fund v. Allen, 106 Ind. 595; Harley v. Heist, 86 Ind. 201; Wanschaff v. Mut. Soc., 41 Mo. App. 206; U. S. Co. v. Kacer, 169 Mo. 315; Reed v. Painter, 129 Mo. 681; Packard v. Mut. Co., 9 Mo. App. 469; Goslin v. Caldwell, 1 Lea (Tenn.) 454; Glenn v. Burns, 100 Tenn. 295; Bank v. Hugh, 128 U. S. 195; Wornock v. Davis, 104 U. S. 775; Love v. Clune, 24 Colo. 237; Bank v. Williams, 77 Miss. 398; Bliss on Life Insurance (2 Ed.), secs. 337, 345; May on Insurance (4 Ed.), 391. (5) Under the evidence the judgment of the trial court adverse to the contentions of

the claimants under the bank, and the bank itself is clearly correct. Stanton v. Gibbons, 103 Mo. App. 264; McCoan v. Mueller, 176 Mo. 196; Meyer v. Christopher, 176 Mo. 596; Markham v. Jaudon, 41 N. Y. 235; Stoker v. Coquall, 25 How. Pr. 267; Carr v. Dings, 54 Mo. 95; Williams v. Mitchell, 112 Mo. 300; Trust Co. v. Mc-Millan, 188 Mo. 547. (6) Under the law neither the Kansas City National Bank in whose name claim is now made nor any claimant under it, has shown any title to the fund in court. Pearce v. Railroad, 21 How. 441; Bank v. Kenedy, 167 U. S. 362; Bank v. Hawkins, 174 U. S. 364; Burrows v. Niblack, 84 Fed. 111; Schofield v. Goodrich, 98 Fed. 271; Transportation Co. v. Palace Co., 139 U. S. 48; McCormick v. Bank, 165 U. S. 549; Bank v. Smith, 77 Fed. 129; Bank v. Pirie, 82 Fed. 799; Wylie v. Bank, 15 Fed. 428; Dresser v. Bank, 165 Mass. 120; Bowen v. Bank, 94 Fed. 925; Bank v. Bank, 173 Mo. 158; Bank v. Mathews, 98 U. S. 621; Thompson v. Bank, 146 U. S. 240; Rostern v. Land Co., 160 Mo. 141; Thornton v. Bank of Summerville, 153 Mo. 13.

BROADDUS, P. J.—This is a proceeding in equity to settle the conflicting claims of the defendants to a certain fund amounting to $4,197.72 in the hands of the plaintiff, a life insurance company. The facts are that, on June 8, 1868, the plaintiff company issued two policies, each for the sum of $2,500, on the life of Horace N. Chittenden, numbered respectively 4881 and 4882. The insured died February 14, 1903. The respondent Albert Young as the administrator of Chittenden's estate filed his interplea claiming that he was entitled to the proceeds of said policy which had been paid into court by the company. The defendants Harriet and Anna B. Chittenden based their claim upon the ground that by the terms of the policy they were its beneficiaries.

The bank, the trust company, Chick and McCoun all base their claims, arising out of the following state of

facts, viz.:—In the year 1874, the claimant Joseph S. Chick, according to his testimony, became cashier of the Kansas City National Bank, at which time said bank had in its possession the two policies in controversy together with what purported to be a written assignment of the same as collateral security for a note purporting to have been executed by Chittenden in favor of the bank. The note was dated in 1873, was for the sum of $3,000, bore interest and was past due in 1874. Chick testified that he was cashier and director of the bank from 1874, until it went into voluntary liquidation under the National Bank Act and paid its debts; that he and the other directors afterwards had possession of all the assets of the bank, including said note, policies of insurance and assignment thereof, as trustees of the bank; that all the other officers and directors of the bank were dead; that McCoun moved out of the State many years ago; and that for a number of years before this controversy he was the sole surviving officer, director and trustee of the bank, had possession of all its assets and was engaged in collecting them. He testified that the note of Chittenden was lost in 1894, and that the policies and assignment thereof, was at all time in the possession of the bank or its officers or directors. He states that no part of the debt had been paid. He could not testify that the signature to the note was that of Chittenden, but that the handwriting was the same as that of the signature of Chittenden to the assignment. His testimony was that the bank paid the premiums while the policies were in its possession, and that he as trustee paid $15 as premium after the bank went into liquidation.

The interpleading bank claims that it is the owner of said fund the proceeds of said policies assigned to it as collateral security for the payment of the said note of Chittenden for $3,000 with interest. McCoun claims an interest in the fund proportionate to the shares of

stock he owned of said bank. The interpleader Chick claims an interest in the fund also as a shareholder of the bank's stock, and the entire fund as the surviving officer and trustee thereof. The trust company claims the fund because the policies had been transferred to it by Chick in consideration of an indebtedness of the latter to the trust company.

The court found for the administrator Albert Young and all the other interpleaders, except Harriet L. and Anna B. Chittenden appealed. One of the contentions of the respondent is that the proceeds of the policies rightfully belongs to the said Harriet L. and Anna B. Chittenden, the former the wife and the latter the daughter of the insured. If such is true it amounts to a confession upon the part of respondent that the judgment in his favor was erroneous and against the rightful claimants, but at the same time it would be a sufficient cause to affirm the judgment as against the appealing interpleaders as they would not be entitled to the fund. The language of the policies is as follows: "And the said company do hereby promise and agree to and with the said assured, his executors, administrators and assigns, well and truly to pay, or cause to be paid, the said sum assured, to the said H. N. Chittenden's legal representatives, within sixty days after due notice and proof of interest (if assigned or held as security), and of the death of said H. N. Chittenden."

The principal controversy is over a construction of the meaning of the language used with reference to the persons to whom the amount of insurance was to be paid upon the death of the insured. The words legal representatives in their general acceptation means executors and administrators, but not always as they may mean next of kin, or assignees. [New York Life Ins. Co. v. Flack, 3 Md. 341; Insurance Co. v. Armstrong, 117 U. S. 591; Bank v. Abernathy, 32 Mo. App. 211; Griswold v. Sawyer, 125 N. Y. 411; Hutson v. Merefield,

51 Ind. 24; Ewing v. Jones, 130 Ind. 247.] In the latter case the grantor conveyed certain real estate to a trustee reserving to himself sufficient in the opinion of the trustee for his maintenance, the estate at his death to descend to his legal representatives, with a proviso that a certain adopted brother, "shall under no circumstances whatever, inherit or be entitled to any part or parcel thereof." The court holds that, "the term legal representatives as used meant the heirs of the grantor." In Griswold v. Sawyer, supra, the controversy was over the proceeds of a life insurance policy which provided that upon the death of the insured the insurance should be paid to his legal representatives. The widow and children claimed it as his legal representatives, and the administrators claimed it. It was held that the term legal representatives meant the wife and children. "That while the strict, technical meaning of the words legal representatives is administrators or executors, and they must be so construed in the absence of anything showing a different intent; as they are not always used in this sense, it is the province of construction in any case to ascertain the sense in which they are used, and for that purpose the subject-matter, and the surrounding circumstances, as well as the language used may be considered." The court then proceeds to state that, the object of such insurance is generally, to provide a support for the family of the insured, which taken into consideration with the extraneous evidence that the insured was an old and feeble man who had once been wealthy, but had become poor, evidenced an intention on his part not to provide a fund for his creditors, as the amount of insurance was small and his debts large. Taking these matters into consideration the court felt justified in construing the words as meaning that the insured intended to make his wife and children and not his executors or administrators his beneficiaries.

But the facts of this case are entirely different.

Chittenden at the time the policies were issued was only twenty-six years old, and unmarried. The fact that he was unmarried would of course do away with the idea that he was providing for any existing wife and children, and it seems to us that there is nothing shown to indicate that he was providing for any such future wife and children. The provision of the policy that the insurer, "do hereby promise and agree with the said assured, his executors, administrators and assigns, well and truly to pay, or cause to be paid, the said sum so assured, to said H. N. Chittenden's legal representatives, etc.," does not in my opinion justify the conclusion that the words meant the assured's next of kin, notwithstanding he used in the first instance the words executors and administrators and applied the term legal representatives to designate his beneficiaries. There is nothing to show that he intended to attach a different meaning to the latter from that of the former. An inspection of the policies which have been furnished us shows that both class of words as used are parts of their printed forms, and that neither was written at the instance of the assured. It is to be presumed however that, the assured read and knew what the policies contained, and that he construed the meaning of the words in their general sense. We are further strengthened in our opinion by other words used, viz.: "proof of interest (if assigned or held as security)." The language indicates that, it was the intention to make the policies assignable. This provision could only have reference to the right of transfer in the insured alone, as he had no family of his own as has been stated, although it was an unnecessary provision for that right existed without it, yet it goes to show what was his intention. All the authorities are agreed that, the word legal representatives means executors and administrators, unless the language of the instrument, or the circumstances surrounding the party indicates a different intention.

Respondent however insists that, there is no proof of assignment of the policies. In addition to the facts already stated that the policies were in the possession of the bank or its officers from 1874, until after it went into liquidation and afterwards to the institution of this suit, there was further evidence to the effect that in the year 1893, and 1894, the insured and the bank were corresponding by letter in reference to the policies wherein the bank offered to sell them to him, and that he made an offer to purchase which the bank declined because it was not deemed sufficient. Besides an application for a life insurance policy purporting to have been signed by the insured was found among the archives of the plaintiff which was given in evidence, and which shows from its contents that it was the application upon which said policy was issued, the signature upon which corresponds with that upon the assignment and the note in question under the proof we do not think there can be any question that the assignment was that of Chittenden.

But it is insisted that there is no evidence that the policies were held by the bank as collateral security for the note, therefore it is void as the bank had no authority under the national banking law to deal in such paper. Every circumstance of the case goes to show that the policies were held as collateral security for the payment of the note. Without deciding whether or not the bank could deal with such paper, except in the way of security for a debt, every presumption is that it was held as such. It would be unreasonable to conclude that a bank of any kind would engage in the business of dealing in the first instance in obligations of such a character. Possession of the note at the same time with that of the policies raises the presumption that the one was held as collateral security for the other. The beneficiaries in the policies being the administrators or ex-

ecutors of the insured, it follows that he had the authority to pledge them for the debt in existence.

And it is further contended as the note is barred by statute of limitations so is the assignment. Upon this question we are referred to section 4276, Revised Stautes 1899. But as that statute applies to mortgages and deeds of trust only, it does not affect the question here. Before its adoption our courts held that the statute of limitations as to notes and other writings of the kind did not apply to mortgages. [Cowan v. Mueller, 176 Mo. 192, and cases cited.] The statute of limitation affects only the personal remedy against the pledgor. [Pledges and Collateral Securities, Jones, sec. 581; Hancock v. Franklin Insurance Co., 117 Mass. 155.]

The respondent raises other questions but we do not deem them of sufficient importance for comment.

It being clear that, the assignment to the bank was valid, and that the statute of limitations does not bar the right of recovery by the proper party the question is presented which of the interpleaders is such party.

As the bank has for years ceased to do business and to keep up its organization by the election of necessary officers it must be treated as a defunct corporation. McCoun notwithstanding he may have an interest in the fund as a shareholder of the bank's stock, such interest would not authorize a recovery by him. And the same may be said in reference to interpleader Chick's personal claim to the fund. And we hold that the assignment by the said Chick to the trust company was invalid as he had no authority to pledge the assets of the corporation. But it is our opinion that the said Chick as the sole surviving director and trustee of the bank is entitled to the possession of the fund as trustee for the shareholders. When the bank went out of business, the policies passed into the hands of said Chick as one of the directors and trustees where it has remained ever

since excepting during the time it was held by the trust company. It was one of the assets that could not be made available to the bank until the death of the insured in 1903, when this proceeding was instituted. As they were pledges, they were not transferable without the consent of the pledgor. [Jones on Pledges, etc., sec. 553.] And they were at all times and still are subject to redemption. As the fund on hand represent the pledges, which are held by the trustee, their possession in law and in equity is his.

It follows from what has been said that other points raised and discussed in the briefs are not important.

It is therefore ordered and adjudged that the judgment of the circuit court be set aside and held for naught, and judgment is hereby entered in favor of said Joseph S. Chick as trustee for the possession of said fund in the amount of $4,197.72 less any allowance therefrom under prior orders of said circuit court, and that he have judgment against all the other interpleaders for his costs as such interpleading trustee. All concur.