REED v. AMERICAN-GERMAN NAT. BANK.

(Circuit Court, W. D. Kentucky. July 26, 1907.)

1. BANKRUPTCY—ACTION BY TRUSTEE—JURISDICTION OF CIRCUIT COURT.

A Circuit Court of the United States has jurisdiction of an action by a trustee in bankruptcy against a national bank to recover usurious interest received by the defendant from the bankrupt, in violation of Rev. St. §§ 5197, 5198 [U. S. Comp. St. 1901, p. 3493]; such action being one arising under the laws of the United States, which might have been brought in such court by the bankrupt, regardless of the citizenship of the parties.

[Ed. Note.—Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. SAME—RIGHT OF TRUSTEE TO MAINTAIN ACTION TO RECOVER USURY PAID.

Under Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], which vests in a trustee all of the rights of a bankrupt in respect to his property, such a trustee may maintain an action to recover usurious interest paid by the bankrupt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 231.]

At Law. On demurrer to petition.

W. V. Eaton, for plaintiff.
J. C. Flournoy, for defendant.

EVANS, District Judge. On October 10, 1906, the E. Rehkopf Saddlery Company was adjudicated a bankrupt by the United States District Court for the Western District of Kentucky, and on November 5, 1906, Cecil Reed was appointed its trustee. On April 5, 1907, this

suit was instituted to recover $14,912.06, which the plaintiff alleges the defendant (which, like the bankrupt, had its place of business at Paducah, Ky.) knowingly collected and received as usurious interest from the bankrupt during the two years immediately preceding the bringing of the action. There is no diverse citizenship, and the defendant has demurred to the petition upon two grounds, viz.: (1) That the plaintiff has not capacity to sue; and (2) that this court has not jurisdiction of the action—and has thus raised important and interesting questions, which have received the very careful consideration of the court.

Section 23 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431]), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 8, 32 Stat. 798 [U S. Comp. St. Supp. 1905, p. 686]), is as follows:

"Sec. 23. Jurisdiction of United States and State Courts.—The United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"(b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, *except suits for the recovery of property under section sixty, subdivision b, and section sixty-seven, subdivision e.*"

The provision of this section which is particularly material is, therefore, that part of clause "b" which enacts that suits by the trustee shall only be brought in the courts "where the bankrupt * * * might have brought or prosecuted them if proceedings in bankruptcy had not been instituted." If the bankruptcy proceeding had not been instituted, could the saddlery company have brought suit in this court to recover the usurious interest paid to defendant; it being a national banking association organized under a law of the United States, viz., the national banking act? This seems to be the statutory test established for such cases in which, and in those described in the clause of the section which we have italicized and which was added by the amendment of 1903, the right of the trustee to sue in the federal courts does not depend upon the consent of the person sued, though in other cases it does. Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Mitchell v. McClure, 178 U. S. 539, 20 Sup. Ct. 1000, 44 L. Ed. 1182.

Until Act Aug. 13, 1888, c. 866, § 4, 25 Stat. 436 [U. S. Comp. St. 1901, p. 514], which provided that national banking associations should be deemed citizens of the states wherein they were respectively organized, suits by or against them might have been brought in the courts of the United States upon the ground that such associations had their source of organization in federal statutes, and, therefore, that such suits arose under the laws of the United States. The act of 1888 overturned that proposition so far as it rested upon that ground only. Continental National Bank v. Buford, 191 U. S. 123, 24 Sup. Ct. 54, 48

L. Ed. 119; Petri v. Commercial Bank, 142 U. S. 649, 12 Sup. Ct. 325, 35 L. Ed. 1144; Ex parte Jones, 164 U. S. 692, 17 Sup. Ct. 222, 41 L. Ed. 601. But this scarcely reaches the question we are called upon to decide, and we must look further.

Since the passage of Judiciary Act March 3, 1875, c. 137, 18 Stat. 470 [U. S. Comp. St. 1901, p. 508], the Circuit Courts of the United States have had original jurisdiction of suits at law or in equity where the amount claimed exceeds the sum or value of $2,000, exclusive of interest and costs, and arising under the Constitution or laws of the United States  In such cases the citizenship of the parties to the suit is immaterial. The case before us is clearly one which arises under the laws of the United States, because the recovery sought and the right to that recovery is based alone upon a statute of the United States, and has no foundation except in that statute. Tennessee v. Davis, 100 U. S. 264, 25 L. Ed. 648; Railroad Co. v. Mississippi, 102 U. S. 141, 26 L. Ed. 96; Bock v. Perkins, 139 U. S. 630, 11 Sup. Ct. 677, 35 L. Ed. 314; Howard v. United States, 184 U. S. 681, 22 Sup. Ct. 543, 46 L. Ed. 754. This being so, it is manifest that the E. Rehkopf Saddlery Company could itself have sued upon the claim in this court before its bankruptcy.

Section 30 of the Act of June 3, 1864 (13 Stat. 108, c. 106), and which, with the amendment thereto presently to be noted, now constitutes sections 5197 and 5198 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3493], is as follows:

"Sec. 30. And be it further enacted, that every association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the state or territory where the bank is located, and no more, except that where by the laws of any state a different rate is limited for banks of issue organized under the state laws, the rate so limited shall be allowed for associations organized in any such state under this act. And when no rate is fixed by the laws of the state or territory, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run. And the knowingly taking, receiving, reserving, or charging a rate of interest greater than aforesaid shall be held and adjudged a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred. But the purchase, discount, or sale of a bona fide bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest."

Under the provisions of Act Feb. 18, 1875, c. 80, 18 Stat. 320, to correct errors and supply omissions in the Revised Statutes, there were added to the above section the following words:

"That suits, actions, and proceedings against any association under this title may be had in any Circuit, District, or territorial court of the United States held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

The court judicially knows that the legal rate of interest in Kentucky is 6 per cent. per annum, and under this statute if any greater rate should be knowingly taken or received by a national banking association the whole interest would be forfeited, and the person paying the same or his "legal representative" may recover the same under the provisions of the national banking act. Whether a trustee in bankruptcy is a "legal representative," within the meaning of the statute, might admit of doubt, though it does not seem necessary to pass definitely upon the point. We say this because the terms "legal representative" and "personal representative," in their commonly accepted sense, mean administrator or executor, though this is not their only definition. They may mean heirs, next of kin, or descendants, and sometimes assignees or grantees. The sense in which the term is to be understood depends somewhat on the intention of the party using it, and is to be gathered, not altogether from its use, but by the surrounding circumstances. 6 Words and Phrases, 5358; Griswold v. Sawyer, 125 N. Y. 411, 26 N. E. 464.

In ascertaining what Congress meant in 1864 in the national banking act, we may recall that there was no bankruptcy act then in force in the United States, and no such person as a trustee in bankruptcy to come within the phrase "legal representative." This might be one of the surrounding circumstances to be taken into consideration, if we were called upon to construe the phrase "legal representative" as used in that act. But, however that may be, we do not suppose that the claim of the plaintiff to a right to sue in this case is necessarily based upon the idea that he is a "legal representative" of the bankrupt in the sense of the national banking act. We assume, rather, that his right to sue is derived from the present bankruptcy act, section 70 of which seems to vest in him all of the rights of the bankrupt himself, and effectively makes him the legal representative of the bankrupt, whatever those words might mean in the other statute by itself. If this be so, he has capacity to bring this action.

Under the judiciary act jurisdiction is given generally to the Circuit Courts of the United States of cases arising under the laws of the United States. The national banking act itself, as amended, gives the Circuit Courts concurrent jurisdiction with the courts of the state having jurisdiction in similar cases of suits to recover interest knowingly collected at a higher rate than allowed by law; and, if this were all, it might well be held that the judiciary act and the national banking act, when construed together, give this court jurisdiction of a case like this. But, as the plaintiff here derives his powers and rights as trustee from the bankruptcy act of 1898, it has seemed to the court that his right to sue must also be tested by the provisions of that act.

As we have seen, section 23b of the bankruptcy act gives him the right to sue here if the saddlery company could have done so, had there been no bankruptcy proceeding. The saddlery company would have had that right, as the claim exceeds $2,000 and arises under the laws of the United States. This court, therefore, has jurisdiction, and the demurrer must be overruled, both because the plaintiff has capacity to sue and because the court has jurisdiction of the action. This

conclusion is well supported by the opinions in Union National Bank of Cincinnati v. Miller (C. C.) 15 Fed. 703, Walker v. Windsor National Bank, 56 Fed. 80, 5 C. C. A. 421, and Auburn Savings Bank v. Hayes (C. C.) 61 Fed. 941.