# Foster *versus* Berg & Co.

1. The construction of a written instrument is exclusively for the court; except when it cannot be understood without reference to facts not within the writing, and then the jury are to judge of the whole together.

2. The pledgee of oil as collateral, sold it to pay the note for which it was pledged, and turned over the surplus proceeds to the maker of the note. A third party, claiming that he owned the oil, subject to the pledge, and was entitled to the surplus proceeds, brought suit against the holder of the note therefor. The evidence of the transaction consisted mainly of telegrams, which the plaintiff claimed affected the defendant with notice of his ownership, and requested the court so to instruct the jury. This the court refused to do, but submitted the writings, together with all the evidence in the case, to the jury, to find whether the defendant had such notice:

*Held,* to be error. The court should have construed the writings, and have affirmed the plaintiff's point, with instructions as to the effect of extrinsic evidence, which might, if believed, vary the written contract.

3. A., having oil in a pipe company, authorized the company to transfer it to B.'s order, as collateral for a loan by B. to C. The pipe company notified B. of such transfer: *Held,* that B. had notice that the oil belonged to A., and, upon sale of the oil for more than enough to pay C.'s note, B. was liable to A. for such excess.

[Foster v. Berg & Co.]

October 18th 1883.  Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Butler county:* Of October and November Term 1883, No. 187.

Trover and conversion, by J. Y. Foster against John Berg, Sr., and John Berg, Jr., doing business as John Berg & Co.

On the trial, before BREDIN, J., the following facts appeared: A. B. White applied to the defendants for a loan of money, $10,000 or $15,000, which the defendants were willing to loan upon satisfactory security. White procured J. Y. Foster, to transfer oil which he had in the Union Pipe Line Company to Berg & Co., as collateral security for the loan to White. The following telegrams and letters evidenced the arrangement entered into by the parties:

"BUTLER, Pa., April 19th 1875.

"J. Y. Foster, East Brady, Pa: Telegraph Union Pipe Company, Parker, to place ten thousand barrels pipeage paid oil to credit of John Berg & Co., to be carried in your tankage, and notify Berg by wire and letter. . . . .       A. B. WHITE."

"April 19th 1875.

" To A. B. White, Butler, Pa.: Have telegraphed Union Pipe Company.  Inform me at Kittanning when you close the matter with Berg.  Need money at Pittsburgh.

"J. Y. FOSTER."

"BUTLER, April 19th 1875.

"J. Y. Foster, Kittanning, Pa.: Everything arranged satisfactory.  Will get money in morning.  Where will you be to-morrow night?       A. B. WHITE."

"April 19th 1875.

" To Union Pipe Company, Parker, Pa.: Place to credit of John Berg & Co. ten thousand barrels pipeage paid oil, to be carried in my tankage, and notify Berg & Co. by wire and letter.  The same is to their credit to secure payment of A. B. White's note for ten thousand dollars.       J. Y. FOSTER."

"UNION PIPE COMPANY,                    }
TELEGRAPH DEPARTMENT, April 19th 1875.  }

"To John Berg & Co., Butler, Pa.: J. Y. Foster has placed to your credit ten thousand barrels oil, pipeage paid, as collateral for payment of a note of ten thousand dollars of A. B. White.       CHAS. J. EASTWICK."

"CHAS. J. EASTWICK,       OFFICE OF GENERAL AGENT, }
General Agent.       PARKER, PA., Apr. 19th 1875. }

"Messrs. John Berg & Co., Butler, Pa.: GENTLEMEN— J. Y. Foster has to-day placed to your credit subject to your orders, ten thousand barrels of oil, pipeage paid, and requested me to notify you by wire and by letter of the fact, and that it is collateral for the payment of a $10,000 note of A. B. White.

[Foster *v.* Berg & Co.]

Enclosed press copy of my message to you by W. U. Tel. Co., to-day.                    Respectfully,

"Chas. J. Eastwick."

"April 19th 1875.

"To C. J. Eastwick, Parker, Pa.: Is oil placed to our credit by Foster as absolutely ours as if we had made purchase of same?                    John Berg & Co."

"Parker, April 19th 1875, 4 p. m.

"To John Berg & Co.: The oil placed to your credit by Foster is as absolutely subject to your order as if you had purchased it.                    Charles J. Eastwick."

White thereupon gave a note to the order of John Berg & Co., dated April 20th 1875 at 90 days for $10,000, with the customary recital of the deposit of 10,000 barrels petroleum &c., and Berg & Co. handed over the money, less discount, to White.

A second loan of $5,000, was made May 26th 1875, in reference to which the following telegrams and letter were put in evidence.

"Butler, May 24th 1875.

"To J. Y. Foster, East Brady, Pa.: Telegraph Union Pipe Company, Parker, to transfer five thousand barrels pipeage paid oil to credit of John Berg & Co., and notify them by telegraph.                    A. B. White."

"May 24th 1875.

"To Union Pipe Company, Parker, Pa.: Transfer to credit of John Berg & Co., five thousand barrels, pipeage paid oil, as security for payment of A. B. White's note for five thousand dollars, and notify Berg & Co. by wire.

"J. Y. Foster."

"Time sent,          Union Pipe Company.          Operator's check,
10:25 a. m.          Telegraph Department.          R. O. & Mc.

"May 24th 1875.

"To John Berg & Co., Butler, Pa.: J. Y. Foster has transferred to your credit five thousand barrels oil, pipeage paid.

"C. J. Eastwick."

"Chas. J. Eastwick,          Office of General Agent.
        General Agent.

"Messrs. John Berg & Co., Butler, Pa.: Gentlemen—J. Y. Foster transferred to your credit, 24th inst., five thousand (5,000) barrels oil, pipeage paid.  This is the same lot I notified you of over our wire 24th inst.          Chas. J. Eastwick,

"Gen. Agent."

Upon receipt of this letter, on May 26th 1875, Berg & Co. loaned White an additional sum of $5,000 taking his note therefor, at four months, similar in form to the former note of $10,000.

[Foster v. Berg & Co.]

On June 15th 1875, Berg & Co. at White's request, or White with Berg & Co.'s permission, sold 5,000 barrels of oil, and on July 7th 1875, 5,000 barrels additional, Berg & Co. giving orders on the Union Pipe company for the same which were duly honored. Of the proceeds, the sum of $10,000 was paid to Berg & Co. in payment of White's note for that amount and the overplus $4,325, was paid to A. B. White, who used the same for his individual benefit.

On July 16th 1875, Foster telegraphed Berg & Co. "when does A. B. White's note $10,000 mature?" to which Berg & Co. telegraphed answer, same day, "A. B. White's note for $10,000 paid."

White testified that he told Foster in September 1875, of the sale of the oil to pay the note, at which Foster expressed dissatisfaction. White replied that he thought he could replace it, but, owing to an unfortunate turn in his business affairs he was not able to do so, and had since been unable to do so.

Foster afterwards, on May 20th 1881, brought this suit, in which he claimed to recover the excess for which the oil sold, over and above White's $10,000 note to wit, the sum of $4,325, with interest.

The plaintiff submitted, inter alia, the following point:

4. The telegrams and letters in evidence show that the oil was Foster's and are sufficient to visit the defendants with that knowledge.

Answer. We say that is a question for the jury and not for the court, and we have submitted it to the jury.

The court, in the general charge, said, "The question here is whether Berg had notice by telegram or otherwise that Foster still retained the ownership of the oil, and that he had merely transferred it to Berg as collateral to the note of White. If they had, then Mr. Foster would retain the ownership of the oil, subject to the payment of the note of White. That is a question for the jury. Did the telegrams which have been read to you notify Mr. Berg that the oil transferred to him still belonged to Foster, and was deposited merely as collateral, and when the notes were paid would revert to Foster? If you are satisfied under the evidence that there was notice, that the telegrams and letters were notice and brought the knowledge to Mr. Berg that the oil was still owned by Foster, and on the payment of the notes would revert to him, your verdict should be for the plaintiff for the balance or amount the oil sold for in excess of $10,000. On the other hand, if you think these were not notice—did not convey knowledge to Berg that Foster still retained the ownership of the oil, then your verdict should be for the defendants."

Verdict for defendants, and judgment thereon. The

[Foster *v.* Berg & Co.]

plaintiff took this writ of error, assigning for error the answer
to the plaintiff's fourth point as above.

*Thompson* (*McCandless* with him), for the plaintiff in error.
—There was nothing in this case to take it out of the rule that
the construction of writings is exclusively for the court :   Par-
ker Bank *v.* Hartley, 10 Norris 470 ; Bryant *v.* Hagerty, 6
Norris 261.

*T. C. Campbell* (*J. D. McJunkin* with him), for the defend-
ant in error.—If the court had construed the writings, such con-
struction would necessarily, we contend, have been in our favor,
and therefore the plaintiff has suffered no injury of which he
can complain.   But the fact that ambiguity was introduced by
the correspondence between the parties previously to the writ-
ings in question, and also by extrinsic evidence, brought the
writings, together with the evidence, within the province of the
jury :  Harvey *v.* Vandegrift, 8 Norris 346 ; Bryant *v.* Hagerty,
6 Norris 256 ; Allegheny R. R. Co. *v.* Steele, 11 W. N. C. 113 ;
Esser *v.* Linderman, 21 P. F. S. 80 ; McKean *v.* Wagenblast,
2 Gr. 462 ; Reynolds *v.* Richards, 14 Pa. St. 205.

Mr. Justice TRUNKEY delivered the opinion of the court,
November 12th 1883.

The construction of a written instrument is exclusively for
the court ; except when it cannot be understood without refer-
ence to facts not within the writing, and then the jury are to
judge of the whole together.   If there be a patent ambiguity
in the terms of a written contract the court must solve it ; but
if ambiguity arise from extrinsic evidence it must be solved by
the jury.   Not controverting these familiar rules, the defendants
contend that under all the testimony the question whether they
had notice of Foster's title to the oil at the time it was sold,
was for the jury ; and, also, that if the court improperly sub-
mitted the construction of the writings to the jury, the error
was harmless, for the writings fail to give notice of Foster's
title.

As the cause was tried the question was submitted upon
the writings alone.   The plaintiff's fourth point was, " The
telegrams and letters in evidence show that the oil was Foster's,
and are sufficient to visit the defendants with that knowledge."
And the court answered, " We say that is a question for the
jury and not for the court, and we have submitted it to the
jury."   Upon this point, in the charge, the court said, " If you
are satisfied under the evidence that there was notice, that the
telegrams and letters were notice and brought the knowledge
to Mr. Berg that the oil was still owned by Foster, and on the

payment of the notes would revert to him, your verdict should be for the balance or amount the oil sold for in excess of $10,000. On the other hand, if you think these were not notice—did not convey knowledge to Berg that Foster still retained the ownership of the oil, then your verdict should be for the defendants." Thus, the writings were submitted to the jury for construction, and the remaining inquiry is whether such submission injured the plaintiff. If they show that Foster retained ownership of the oil, subject to Berg & Co.'s right as collateral security for White's notes, then the court should so have instructed the jury, and the plaintiff has cause for complaint.

The telegrams and letter relating to the ten thousand barrels of oil, explicitly state that Foster had placed the oil to the credit of Berg & Co. as collateral for the payment of White's note for ten thousand dollars. They inquire by telegram, " Is oil placed to our credit by Foster, ours as absolutely as if we had made purchase of the same?"—and received answer, " The oil placed to your credit by Foster is as absolutely subject to your order as if you had purchased it." It is plain that Berg & Co. took the oil as collateral security for the note, subject to their order as if they had purchased it ; but upon payment of the note at maturity, the oil would belong to him who gave it as collateral ; or upon default in payment and sale of the oil by the holder, the overplus after satisfaction of the note belonged to the owner of the oil. Foster placed the oil and named the purpose ; it had been stored in his name, and he transferred it to name of Berg & Co. ; the direct and natural inference is that it belonged to him. There is nothing to indicate that he sold or gave the oil to White. Had White been the owner, or had the Union Pipe Company held it in his name, Foster could not have transferred it to anybody for any purpose. In absence of evidence to the contrary, the man who holds a chattel in his own name and pledges it, is presumed to be the owner, and the pledgee is taken to have knowledge that the pledgor is the owner.

The writings respecting the second lot of oil are not so explicit ; but it has not been contended that this lot was received on other terms than the first.

We are of opinion that the plaintiff's fourth point ought to have been affirmed. Even if there were sufficient testimony, if believed, to alter or vary the written contract, the plaintiff would be entitled to affirmance of that proposition, though it should be the duty of the court to instruct the jury respecting the effect of such extrinsic testimony.

Judgment reversed and venire facias de novo awarded.