# Tagg *versus* Bowman.

1. An agent or attorney who by virtue of a special authority, has received money, cannot, when sued by his principal, set off a debt due to himself in a matter not arising out of his agency.

2. A., by letter of attorney, authorized B. to collect the rents accruing from a certain property belonging to A., and to apply said rents first, to the taxes and water rents on said premises; then to the interest on a first mortgage secured thereon; then to the interest on a second mortgage, and then to the interest on a third mortgage, which was held by B. Acting under this authority B. collected rents to the amount of $700, which he appropriated solely to his own claim, although this sum was not sufficient to pay the amounts due on the prior specified charges. In an action of assumpsit by A. against B. to recover the amount so misappropriated:

*Held*, That the money in B.'s hands must be applied to the specified objects in the order designated; and that having refused to so apply it, B. could not set off the principal or interest due on his own mortgage, against A.'s demand.

January 8th, 1885. Before MERCUR, C.J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J. absent.
　　　12 OUTERBRIDGE—18

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of January Term, 1884, No. 234.

Assumpsit, by John T. Tagg to the use of Horace F. Weeks, against Jonas Bowman, to recover certain rents collected by the defendant under a power of attorney from the plaintiff. Pleas, non-assumpsit, payment with leave, set-off, &c.

On the trial, before PEIRCE, J., the following facts appeared: In January, 1877, Tagg purchased from Bowman a piece of land in Montgomery County, and as part consideration gave Bowman a bond and mortgage for $4,666.66, secured upon property, owned by him (Tagg), at the corner of Tenth and Pine streets in the city of Philadelphia. This property was already subject to the liens of two prior mortgages, one for $6,000, to the Philadelphia Savings Fund, and one for $2,500, to the St. Andrews Building Association. As further security to Bowman, Tagg also gave him the following letter of attorney:

"I, JOHN T. TAGG, of the city of Philadelphia, do hereby constitute Jonas Bowman, of Montgomery County, Pennsylvania, my true and lawful attorney for me and in my name, to collect and receipt for the rents due and to become due from Thomas R. Kemp, tenant of the property at the southeast corner of Tenth and Pine streets, in the City of Philadelphia, during the present lease thereof; and out of such rents to pay first the taxes and water rent on said property, then the interest upon the mortgage thereon in the Philadelphia Saving Fund Society, then the interest and dues on the mortgage of $2,500 thereon in the Saint Andrew's Building Association, and then the interest on the mortgage of $4,666.66 thereon given to the said Jonas Bowman, as the said interests become due, and the balance of said rents, if any, to pay over to me. Witness my hand and seal this thirty-first day of January, A. D. 1877."

In pursuance of this letter, and beginning in November, 1878, Bowman collected about $700 in rents, all of which, with the exception of $19.55, paid for water rents, he applied to his own claim against Tagg, instead of to the objects designated in the power of attorney. On April 4th, 1879, the Pine street property was sold in pursuance of foreclosure proceedings under the Building Association mortgage, whereby the lien of Bowman's mortgage was discharged.

Previous to this sale, however, Bowman had entered judgment on the bond accompanying his mortgage, in Common Pleas, No. 2, of Philadelphia County.

This case was first tried in October, 1880, before PEIRCE, J., when the plaintiff, under his plea of set-off, offered his judgment on the bond in evidence. This was admitted by the court, and a verdict directed for defendant in consequence.

[Tagg v. Bowman.]

Judgment entered on this verdict was afterwards reversed on writ of error to the Supreme Court. (3 Out. 376.)

The case again came up for trial before PEIRCE, J., on October 2d, 1883. The plaintiffs proved the collection of the $700 by Bowman; his failure to apply it according to the terms of the power of attorney, and then closed. Defendant then moved for a nonsuit on the ground that there was interest due on his mortgage, and that this being one of the claims to be paid under the letter of attorney, he had· a right to apply the rents thereto.

The court thereupon entered a nonsuit, which the court in banc subsequently refused to take off; whereupon the plaintiffs took this writ, assigning for error the refusal of· the court to take off said nonsuit.

*H. Haverstick* and *J. R. Rhoads*, for plaintiffs in error.—The directions contained in the letter of attorney were clear, distinct and emphatic, and Bowman had no choice but to obey them exactly: Wilson *v.* Wilson, 2 Casey, 393. Although Bowman's interest was one of the claims to be paid, yet it was only to be paid after the other claims named prior thereto had been met; so that this defense is precisely the same as that made by him at the first trial, namely, a general set-off, which this court has said cannot be allowed. Bowman having collected the money in the name of Tagg, but refused to apply it as directed, the latter's right to sue and recover it from him is undoubted: Reeside *v.* Reeside, 13 Wr. 322; Gallagher *v.* Gallagher, 6 Philadelphia, 528. The question, whether there was any interest due Bowman, was one of fact for the jury.

*J. Quincy Hunsicker* (with whom was *George S. Graham*), for defendant in error.—An action of assumpsit will not lie against an agent by his principal for moneys received by the agent, where it is the duty of the agent to disburse as well as receive: Reeside *v.* Reeside, *supra;* Gallagher *v.* Gallagher, *supra.* The right of action was in the parties named in the letter of attorney, not in the plaintiff: Torrens *v.* Campbell, 74 Pa. St., 470; Guthrie *v.* Kerr, 4 Nor. 308. Plaintiff's only right against defendant was to "the balance of said rents, if any," after the payment of the interest due the defendant on his mortgage; and plaintiff offered no evidence to show what balance, if any, was due him.

Mr. Justice STERRETT delivered the opinion of the court, February 9th, 1885.

When this case was here on former writ of error the principles springing from the relation that existed between plain-

tiff and defendant, as principal and agent, were clearly stated in the opinion of this court, delivered by the present Chief Justice, wherein it is said, inter alia: "By accepting the letter of attorney the defendant assumed the obligation and assented to the terms imposed on him. It thereby became his duty to collect the rents and pay over the same to the several persons in the order therein specified. His right to retain any portion thereof, or to apply it to the debt due himself was expressly limited to the interest on the latter. His power to collect was coupled with the specific trust prescribed in the same instrument. Having received the money under authority of the plaintiff for a specific purpose, he cannot apply it to the payment of a previous indebtedness. It cannot be thus diverted from its legitimate purpose:" 3 Out., 376.

A proper application of these principles to the facts which the plaintiff's testimony, on the last trial, tended strongly to establish, not only required the submission of the case to the jury, but would have justified them in finding in favor of plaintiff for so much of the rent received by defendant as was not applied by him in accordance with the terms of the letter of attorney under which it was collected, with interest from date of suit.

It was practically conceded that from November 4th, 1878, to April 4th, 1879, inclusive, defendant collected $700, which by the express terms of the power of attorney he was bound to apply to payment of the following items in their order: 1st. Taxes and water rent on the demised premises; 2d. Interest on mortgage, $6,000, in favor of the Philadelphia Savings Fund Society; 3d. Interest and dues on mortgage, $2,500, held by the St. Andrews Building Association, and lastly, to interest on his own mortgage of $4,666.66. Without the consent of plaintiff, he had no right to apply a cent of it in any other way. The money collected by virtue of the power of attorney belonged to plaintiff, and, as it came into defendant's hands from time to time, it was impressed with a trust in favor of plaintiff which required its application to the specified objects in their order. So long as there was anything due and payable on account of either of the three preferred objects he had no right to appropriate any of the money to the interest on his own mortgage. If he did it was a manifest breach of the trust under which it was received.

The testimony tended to prove not only that the sums due and payable on the three preferred classes of liabilities, specified in the power of attorney, exceeded the amount collected by defendant, but also that there was very little if any interest due him on his mortgage at the time this suit was commenced. The interest on the latter to that date, May 29th, 1879, appears

to have been $653.33, on account of which he had received $139.99 from plaintiff, and collected on *testatum fi. fa.* to Montgomery County $511, making in all $650.99. These and other subjects of inquiry, suggested by the testimony, were clearly for the consideration of the jury, and, if they had been permitted to pass upon the same, they might and probably would have found that defendant neglected and refused to apply the money received by him to the objects specified in the power of attorney, and that he did so without any justification or excuse other than a desire and determination, on his part, to appropriate it to his own use. If these facts had been found by the jury the plaintiff, under our former ruling, would have been entitled to recover, and defendant should have been denied the right of set off. It was never intended that our defalcation Act should be used as the means of rewarding perfidious conduct. Public policy forbids that its provisions should be invoked for any such purpose.

Defalcation is a legal right, secured to a defendant who has demands against a plaintiff due in the same right and payable when suit was commenced; but it may be waived by contract express or implied. An agreement to waive the right, if founded on a good consideration, is undoubtedly binding. The receipt of money by one person from another, to be applied to a specific purpose, implies an agreement, on the part of the former, not to apply it to any other use, and of course not to his own by pleading a set-off: Smuller *v.* The Union Canal Company, 1 Wr., 68; Bank *v.* Macalester, 9 Barr, 475; Ardesco Oil Co. *v.* North American Oil and Mining Co., 16 P. F. S. 375, 380. In Simpson *v.* Pinkerton, 10 W. N. C. 423, we held that an attorney at law or in fact employed to collect a claim, when he has received the money, has no right to set off an antecedent debt or claim of his own against his constituent, without first showing that the latter agreed he might retain his demand out of the money. It was also ruled, in Middletown and Harrisburg Turnpike Road *v.* Watson, 1 Rawle 330, that an agent of the company, who had received money to its use, could not in a suit against him set off debts of the company which he had paid without showing he had authority to pay them. It is there said: "As long as the agent acts within the scope of his authority, and no longer, he is protected. It was the duty of Watson to collect and pay over the funds as they came into his hands. It was for the company to direct the application of the money, when in the treasury or under their control, to the discharge of their debts, the repair of the road, or whatever purposes they might suppose most beneficial to the corporation. This they have been prevented from doing by an assumption of power by their

agent and a misapplication of the funds of the company. If such a breach of trust should be permitted it would, in practice, lead to great abuses by introducing a scene of speculation and fraud the most disastrous, and of the most secret and dangerous nature. A principal may give a special authority to his agent to settle and liquidate his debts; but previous to the introduction of such a defence to a suit brought for money had and received as agent, the special authority should be shown." Other cases, bearing on the subject, might be cited, but it is unnecessary. The principle underlying all of them is, that an agent or ‘attorney who, by virtue of special authority, has received money cannot, when sued by his principal, set off a debt due to himself in a matter not arising out of his agency. By accepting the special trust he waives the general right of set-off. Moreover, the debts, not being due in the same right or capacity, lack that mutuality which is essential to the right of set-off.

The fact that the demised premises were sold by the sheriff about a month before this suit was brought has no bearing in favor of the position assumed by defendant. If he had applied the rent collected, as he was in duty bound to do, the incumbrances on the property, at the time of the sheriff's sale, would have been reduced to that extent. Whether they were discharged by the sheriff's sale or not is immaterial to this issue. They were neither paid nor reduced by defendant. The money he received in special trust to be applied to their reduction, except the small sum of $19.55, was wrongfully retained by him and is still in his possession, to the detriment of plaintiff.

It follows from what has been said that the learned judge erred in entering judgment of nonsuit.

         Judgment reversed and a procedendo awarded.