In re FISHEL et al.

In re NATIONAL DISCOUNT CO.

(Circuit Court of Appeals, Second Circuit. June 5, 1912.)

No. 230.

1. USURY (§ 111*)—AFFIRMATIVE RELIEF—BANKRUPTCY.

A petition in bankruptcy for an order directing the trustee to surrender the proceeds of accounts to petitioner under a collateral loan contract, and an answer pleading usury, and asking that the petition be denied, and the trustee be declared entitled to the proceeds, does not show a prayer by the trustee for affirmative relief within New York General Business Law (Consol. Laws 1909, c. 20) § 377, under which only a borrower is entitled to affirmative relief against a usurious contract without paying the amount due, with legal interest.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 272–306; Dec. Dig. § 111.*]

2. USURY (§ 53*)—USURIOUS CONTRACT.

A contract for a loan providing for a 5 per cent. commission to be paid the lender for certain services, such as collecting accounts held as col-

lateral security, in addition to legal interest on the loan is usurious, it appearing that actual rendition of such services was not contemplated.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 91, 114–118; Dec. Dig. § 53.*]

Petition to Revise and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Henry W. Fishel and another, bankrupts. On petition by the National Discount Company to review, and on appeal by the company from an order of the District Court modifying an order allowing a claim of said petitioner. Affirmed.

Jerome, Rand & Kresel (William J. Wallace and Isadore J. Kresel, of counsel), for appellant.

Stroock & Stroock and Hays, Hershfield & Wolf (S. M. Stroock, Charles Levy, and Ralph Wolf, of counsel), for appellee.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. [1] The National Discount Company is the assignee of certain specified accounts due Fishel, Nessler & Co. as collateral for repayment by them of advances made under an agreement dated August 8, 1910, whose sixth article is:

"Sixth.—The customer agrees to pay to the banker in cash or allow the banker, if it so elects, to retain from any moneys advanced, collected or received upon the accounts of the customer, a commission of 5 per centum on the gross amount of accounts of the customer assigned to the banker, to reimburse the banker for services rendered or to be rendered in the collection of the accounts, such as sending out statements, attending to all correspondence, adjust returns, allowances, discounts and investigations with reference to same, and for assisting in extending credits, securing references and reports and generally in aiding and assisting the customer with his credit department. The customer also agrees to reimburse the banker for such outlays as exchange on checks and postage."

Before the agreement was executed the borrowers wrote as follows to the lenders:

"Mr. Julius Lewis (Natl. Discount Co.), 682 Broadway, City.

My Dear Sir: In signing the enclosed formal agreement, it is agreed and understood that you are at no time to have any communication whatever with any of our customers and that the accounts are only to be used as collateral for loans made. We are to collect all outstandings and agree to endorse and turn over the checks to you as received and if at the expiration of each loan the full amount is not paid, we are to send our check to wipe out such loan."

The proofs show that the lender was not intended to perform, and did not perform, any of the services mentioned in section 6 of the agreement.

November 3, 1910, a petition in bankruptcy was filed against Fishel, Nessler & Co., and a receiver appointed who was subsequently elected trustee. It was found that the bankrupts had assigned some of the same accounts assigned to the National Discount Company to two other lending companies, viz.: Bloomingdale Bros. and Traders' Commercial Company. It being obvious that collection by any one under

these circumstances would be difficult, the lending companies, November 15, 1910, entered into the following agreement which the receiver, though not a party signatory, actually carried out:

"Whereas, the National Discount Company, Bloomingdale Bros. and Traders' Commercial Company claim to be the owners of certain outstanding accounts of the above-named alleged bankrupts, and

"Whereas, it appears that a large number of the debtors on such outstanding accounts have refused to pay the said accounts, and

"Whereas, it appears that it would be advantageous to have all outstanding accounts collected by and through John S. Sheppard, Jr., receiver in bankruptcy of the above-named alleged bankrupts, it is stipulated as follows:

"First.—That all outstanding accounts of the above-named alleged bankrupts owned or claimed by the parties above named, be collected by and through the receiver herein.

"Second.—That all moneys collected by the receiver from the accounts claimed to have been assigned, shall be kept by the receiver in a separate fund, subject to the rights and remedies of the parties hereto, and subject to the further order and determination of the court.

"Third.—That any and all merchandise returned to the receiver on the accounts claimed to have been assigned, shall be kept separate and apart from the rest of the merchandise in the possession of the receiver and be subject to any and all claims of the parties hereto, and subject to the further order and determination of the court.

"Fourth.—It is further understood and agreed that the National Discount Company, Bloomingdale Bros. and Traders' Commercial Company will write to the debtors with whom they have been in communication to the effect that the account should be paid to the receiver, and otherwise facilitate the receiver in the collection of the accounts.

"Fifth.—It is understood that this stipulation shall be without prejudice to the rights of the parties hereto and that the fund collected by the receiver as well as the merchandise set aside by the receiver from the outstanding accounts claimed to have been assigned, shall be subject to the claims of the parties, as to ownership and priority, with the same force and effect as if this stipulation had not been entered into.

"Sixth.—Nothing herein contained shall authorize the receiver to bring suits on said account, except with the consent to be hereafter obtained from the three parties or such of the three parties interested in the claim in which suit is contemplated."

January 9, 1912, by a subsequent stipulation, the receiver turned over the said moneys and proceeds to himself as trustee.

There is not much difficulty about the legal principles involved, but there is some as to what the parties, in view of their stipulations and their conduct, intended.

In this state before statutory regulation to the contrary, one who paid more than the legal rate of interest for the loan of money could recover the excess, provided he repaid the money actually loaned (Wheaton v. Hibbard, 20 Johns. [N. Y.] 292, 11 Am. Dec. 284; Palen v. Johnson, 50 N. Y. 49); and, of course, equity would not give the relief by requiring the cancellation or surrender of instruments securing usurious loans except upon the same condition (Livingston v. Harris, 11 Wend. [N. Y.] 329). The statutory changes so far as need be considered in this case are found in the following sections of the General Business Law:

"373. Usurious contracts void. All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods, or other things

whatsoever, whereupon or whereby they shall be reserved or taken or secured or agreed to be reserved or taken, any greater sum or greater value, for the loan or forebearance of any money, goods or other things in action, than is above prescribed, shall be void. Whenever it shall satisfactorily appear by the admissions of the defendant, or by proof, that any bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt, has been taken or received in violation of the foregoing provisions, the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and canceled."

"377. Borrower bringing an action need not offer to repay. Whenever any borrower of money, goods or things in action, shall begin an action for the recovery of the money, goods or things in action taken in violation of the foregoing provisions of this article, it shall not be necessary for him to pay or offer to pay any interest or principal on the sum or thing loaned; nor shall any court require or compel the payment or deposit of the principal sum or interest, or any portion thereof, as a condition of granting relief to the borrower in any case of usurious loans forbidden by the foregoing provisions of this article."

It will be seen from the foregoing that no lender can recover on any usurious contract who in making out his case develops the taint of usury or against whom the borrower or his privies set up and sustain the defense of usury. This is a necessary result of the statutory provision that all such agreements shall be void. On the other hand, although the borrower and his privies can attack usurious agreements, only the borrower can do so free from the condition of paying the amount actually loaned with legal interest. This is the difference made between defending and attacking on the ground of usury. The Court of Appeals of New York has strictly confined the privilege of attacking without paying the amount loaned with legal interest to the actual borrower, holding that an assignee in bankruptcy under the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 522) of the borrower is not entitled to it. Wheelock v. Lee, 64 N. Y. 242. It is contended by counsel for the trustee that this case is inconsistent with our decision in Re Kellogg, 121 Fed. 333, 57 C. C. A. 547. We do not think so. The trustee in that case as owner of the mortgaged premises asked the court for leave to sell the same free and clear of liens, which is a very common course in bankruptcy. The proceeds of sale took the place of the land, and he was defending on the ground that the mortgage was usurious against the claim of the mortgagee to be paid out of them. What the court decided was that he had a right, as the successor of the borrower, to make this defense.

The obvious reason why the receiver was selected to collect these accounts and keep them separate from the other funds of the estate was that, if they did not belong to the lending companies as assignees of the bankrupt, they belonged to the bankrupt, and therefore to his trustee. This would follow automatically without the trustee's making any affirmative claim because the funds were in his possession. The course of proceeding which the parties actually took shows that the claimants were asking for affirmative relief. February 6, 1911, the Discount Company filed a petition setting forth its claims as owner, and praying that the court order the trustee "to surrender to the petitioner the said moneys or property above referred to, together

with any and all other moneys or property now in his possession or under his control belonging to the petitioner."

The other lending companies filed similar petitions. March 24, 1911, the trustee filed an answer (and filed answers to the petitions of the other lending companies) denying the petitioner's title and setting up the defense of usury, and praying that the petition be denied, and that the moneys in question be declared the property of the trustee in bankruptcy of Fishel, Nessler & Co.. Affirmative relief being not proper to a mere defense, this latter part of the prayer should be taken to be another way of praying for the dismissal of the petition, viz., that the moneys were not the petitioner's but were the respondent's.

Before the special master the Discount Company assumed the burden of proving its claim and established it to his satisfaction. It was only after the district judge had modified the master's report by holding that the contract between the Discount Company and the bankrupt was usurious that the stipulation of November 15, 1910, was brought to his attention, and the claim made that the trustee was asking for affirmative relief without the payment of the amount actually loaned with legal interest as he was bound to do under section 377, supra.

The other lending companies are content with the report of the special master and the order of the court modifying it, so that their claims need no consideration.

[2] We entirely agree with the conclusion of the district judge that the large commissions agreed for in addition to legal interest were a device to cover usury.

We are unable to adopt the theory of the Discount Company that the receiver and trustee in bankruptcy is to be regarded as the agent and trustee of the lending companies, having no claim of his own to the moneys collected by him under the stipulation, and therefore under the necessity of asking for affirmative relief. It may be conceded that the question is not perfectly clear, but we are not disposed to differ from the conclusion of the district judge.

The order is affirmed, with costs.