## Kelter, Trustee, *v.* American Bankers Finance Co., Appellant.

484

Argued January 7, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*George J. Edwards, Jr.,* with him *Hiram B. Calkins,* for appellant.—The transaction in this case constituted a sale of contracts with guarantee that full proceeds would be received by defendant and plaintiff had no interest in the proceeds of any contract other than as provided for in the agreement of the parties: Conway v. Alexander, 7 Cranch 218; Hertzog v. Hertzog, 29 Pa. 465; Harrison v. Fortlage, 161 U. S. 57; Reed's Est., 247 Pa. 441; Galey v. Guffey, 248 Pa. 523; Imperial Fire Ins. v. Coos Co., 151 U. S. 452; Jefferies v. Ins. Co., 22 Wall. 47; Root v. Acceptance Corp., 279 Pa. 55; Summit Hosiery Co. v. Gottschall, 292 Pa. 464.

Defendant had a right to set off its losses due to bankrupt's breach of contract against surpluses realized from other like contracts: Cumberland Glass Mfg. Co. v. De-Witt, 237 U. S. 447; Studley v. Bank, 229 U. S. 523; Knoll v. Trust Co., 249 Pa. 197; Fisher v. Davis, 278 Pa. 129.

No right passed to the trustee in bankruptcy to recover alleged usurious interest from defendant, and no right existed in any one at the time this suit was commenced to recover such interest from defendant: Stayton v. Riddle, 114 Pa. 464; Lennig's App., 93 Pa. 301; Osborn v. Bank, 175 Pa. 494; Com. v. Hill, 46 Pa. Superior Ct. 505; Lehigh Val. R. R. v. Comar, 151 Fed. 559; Land Co. v. Weidner, 169 Pa. 359; York Mfg. Co. v. Cassell, 201 U. S. 344; Stone v. Ins. Co., 278 Pa. 400.

*David F. Maxwell,* with him *Oswald M. Milligan* and *George B. Clothier* and *Edmonds, Obermayer & Rebmann,* for appellee.—The injunction granted by the bankruptcy court does not prevent the appellee from maintaining this suit.

Appellant was pledgee and not purchaser of the contracts here involved and its advances to the bankrupt were loans: Weber v. Kline, 293 Pa. 85, 89; Kern v.

Smith, 290 Pa. 566, 569; Miller v. Trust Co., 285 Pa. 472; Home Bond Co. v. McChesney, 239 U. S. 568; Root v. Acceptance Corp., 279 Pa. 55; Sterling Commercial Co. v. Smith, 291 Pa. 236.

Appellant, as pledgee, was trustee of the collateral pledged, so that as to each separate contract the surplus proceeds over the amount of the loan and proper charges was a trust fund not subject to set-off against the bankrupt's obligations on other unprofitable contracts: James's App., 89 Pa. 54; Penna. Co. for Ins., etc., App., 18 W. N. C. 469; Register v. Sellers, 19 Phila. 446; Russell v. Miller, 54 Pa. 154; Searight v. Bank, 162 Pa. 504; DeHaven's Est., 236 Pa. 146; Libby v. Hopkins, 104 U. S. 303.

In this accounting appellant cannot be given credit for so-called finance charges which were really usurious interest.

OPINION BY MR. JUSTICE MAXEY, March 14, 1932:

This was a bill for accounting of the proceeds received by defendant from certain contracts assigned by the Integrity Construction Company, now a bankrupt corporation, whose interests have passed to the plaintiff. These contracts were assigned to the defendant as collateral for the payment of loans made to the construction company hereinafter referred to as the Integrity.

The lower court decreed the payment by defendant to plaintiff of the sum of $8,597.05 and this appeal was taken on numerous assignments of error relating to facts and law.

These facts are undisputed. The Integrity was incorporated in Pennsylvania in 1926 and engaged in the general construction business. Its work related to individual small homes. It entered into contracts to construct or repair houses but it lacked capital. Defendant is a Delaware corporation registered to do a general finance business in this Commonwealth. It had capital. In April, 1926, it loaned Integrity money in return for

transfers of contracts with individual home owners. This was the course of dealing between the two companies: Integrity would execute a written contract with a home owner specifying the work to be done and fixing a price and would take the owner's judgment note for the amount. Each contract consisted of a formal application by the property owner addressed to Integrity, requesting the improvements desired. Integrity would then secure a contract from the property owner, together with a judgment note for the cost of the work. The defendant being informed of this would determine whether the equity in the property justified Integrity in performing the contract. When Integrity received a satisfactory report from defendant as to this, the judgment note was entered and performance proceeded with. When the property owner certified that the work was executed in a satisfactory manner, defendant turned over to Integrity sums up to seventy per cent of the total amount of the contract, stating that it was on account of the purchase of the contract and acknowledging that on payment of the full amount of the contract by the property owner a balance in a designated sum would be due Integrity, less a finance charge of three per cent on the amount then being paid Integrity if settlement was made in thirty days; if settlement was delayed beyond thirty days the finance charge was to be at the rate of two and one-half per cent per month together with the cost of entering the note. Integrity then arranged for a mortgage to be placed upon the renovated property and settlement was at thirty, sixty or ninety days except in the transactions involved in this suit. The proceeds of the settlement were paid to defendant. The latter deducted the amount due it and forwarded the balance to Integrity.

The contracts of the property owners were "sold, assigned and transferred" by Integrity to the defendant by writing, accompanied by Integrity's declaration that the work provided for in them had been completed to the

satisfaction of the property owners and that the amounts specified in the thereunto attached notes were due and accompanied by Integrity's guarantee that all the moneys under the contract would be promptly paid.

In several transactions in which Integrity had obtained the defendant's money on acceptance cards indicating that the work had been done satisfactorily and which work Integrity declared had been done, the work specified had not in fact been done. Prior to November 17, 1926, Integrity defaulted in the performance of these contracts and defendant arranged with the property owners for the carrying out of the contracts and the defendant expended the sums necessary for the contracts' completion.

Following Integrity's default, defendant did not remit the credit balances due Integrity, either to Integrity or to the plaintiff, but applied these balances to other contracts under which it had suffered losses by reason of the default of Integrity.

January 19, 1927, Integrity was adjudicated a bankrupt, and, on April 8, 1927, John H. Kelter, the plaintiff below, was elected trustee of the bankrupt estate.

On June 29, 1927, the plaintiff trustee obtained an order from the bankruptcy court restraining and enjoining defendant and all its agents and attorneys from collecting, disposing of or applying to its own use or that of any other person or persons any of the funds due or to become due on the contracts transferred to it by Integrity. That order was complied with by defendant and it has not been modified or revoked.

Thirty-one contracts became the subject-matter of this litigation. The court below annexed a schedule to its adjudication stating the facts and figures as it found them relating to these transactions.

The trial judge made twenty-seven findings of fact on matters in dispute. The twenty-second finding of fact reads as follows: "Each of the thirty-one contracts assigned in the instant case by the bankrupt to the defend-

ant was so assigned in a separate transaction; and the bankrupt and the defendant entered into a separate and distinct loan agreement in respect to each of them, as described in the admitted findings of fact. No general contract covers them all." The court further found in substance: that the advances by defendant to Integrity were intended as loans; and that there was no agreement between the parties whereby the finance company could retain the surplus of security on one contract to apply against the deficit on another. The agreed finance charge of three per cent for the first thirty days and two and one-half per cent per month thereafter he held was intended as compensation for the use of the money loaned. He then made up an account between plaintiff and defendant on the basis of twenty-four of the thirty-one contracts, omitting from consideration two of the contracts in suit, numbers twenty-eight and thirty, because full settlement between the parties as to these had been previously reached, and also five others from which proceeds received had been insufficient to discharge the loan and pay costs of completion, and on which the finance company had consequently suffered a loss. The credit balance in plaintiff's favor in the case of each con tract or loan is computed by deducting, from the amount recived by the finance company from the home owner, in both cash and notes, the amount advanced by way of loan and the costs and finance charges. The sum of these balances, $5,918.37, represents the amount due Integrity. To this was added: $257.23, as overcharges on the agreed finance charges for these twenty-four contracts, because fractional parts of a month were charged the full monthly rates; $990.98, overcharges resulting from defendant's assessment of finance charges subsequent to the date of the petition in bankruptcy at the specified monthly rate; $1,428.43, overcharges because the finance charges of thirty and one-half per cent per annum were in reality merely usurious interest charges, in violation of statute; and $2.04 as balance due In-

tegrity on contract numbered twenty-four when credit was given it for defendant's overcharge of the full monthly rate of finance charge for a fraction of a month. The decree was then entered in plaintiff's favor for the total of these sums, amounting to $8,597.05. This appeal was taken on exceptions to the decree and the findings of fact and of law.

The fundamental question in this case is whether the transactions which included the assignment of the contracts to the finance company, the advancement of a percentage of the amounts due on them, the written guarantees of payment by Integrity and the matters incidental to them, amounted to sales of the contracts for consideration or merely the advancement of loans to Integrity by the defendant finance company on the security of the assignments. On this issue turn most of the other matters in dispute. The learned trial judge's discussion of these transactions is apt and accurate: "The now bankrupt was at the time of the transactions a company engaged in a general constructing business. It was occupied in repairing and making additions to houses. It dealt with persons who were not in a position to pay cash for what they wanted, and the company itself apparently had not sufficient capital to carry on its business. To this combination of persons, who wanted to spend on their houses money they did not have, and this builder who was willing to supply the householder, but did not have the money to pay for the necessary labor and material, a banker like the defendant was needed to supply the necessary money. On the other hand, the defendant was not in the building business, and had no equipment for carrying on such a business, while it was amply supplied with, and was in the business of dealing in money, and lending it upon security. The normal result of such a situation, after the banker had satisfied himself of the security for the loan in the house owner's equity in his property, and the existence of a contract between the builder and the house owner, would be a

loan and not a purchase of a contract to build. In the agreed facts, the course of dealing is described: the contract between the home owner and the builder, the application to the banker, the execution by the owner of the judgment note, the examination of the property by the banker (the defendant), the assignment of the contract, the advancement of money to the builder, the completion of the work, the payment by the householder to the banker, the retention by the latter of the 'finance charges,' and the payment of the balance to the contractor. It is true that the letters exchanged (which constitute the contracts) speak of the 'purchase of the contract,' but they also speak of 'money advanced' and they provide for 'finance charges' on the money advanced and for 'searches' made in the lender's interest. On profitable contracts a balance was paid by the so-called 'buyer' of the contract to the alleged 'seller.' We cannot reconcile the payment of interest and finance charges, nor of the buyer's expenses in 'searches' with the idea that the contractor had sold his contract to the banker. The parties may call this what they please. It is in fact nothing but a loan upon the collateral of the assigned contract."

In cases of this kind it is more important what parties actually do than what they say they do. Courts will not be controlled by the nomenclature the parties apply to their relationship: Root v. Republic Acceptance Corp., 279 Pa. 55, 57; S. F. Bowser & Co., Inc., v. Franklin Mortgage & Investment Co., 305 Pa. 459. In Sterling Commercial Co. v. Smith, 291 Pa. 236, a purported sale was held to be nothing more than a pledge of collateral to secure a loan, and void as against creditors of the pretended vendor. Transactions similar in character to these have frequently been held to be in fact loans, though apt words importing sales were used by the parties. In Home Bond Co. v. McChesney, 239 U. S. 568, 575, the language of the court was this: "In so far as the contracts in question here use words fit for a con-

tract of purchase they are mere shams and devices to cover loans of money at usurious rates of interest." See the following federal cases to the same effect: National Trust & Credit Co. v. F. H. Orcutt & Son Co., 259 Fed. 830; Brierley v. Commercial Credit Co., 43 Fed. (2d) 724, 730; In re Gotham Can Co., 48 Fed. (2d) 540.

The trial court found upon competent evidence that the assignment of each individual contract was a distinct transaction in itself, not governed by any general agreement which would permit the security-holder, the finance company, to hold the surplus proceeds of one contract as security for another. Assignments as collateral security are to be strictly construed (DeHaven's Est., 236 Pa. 146), and in the absence of a contrary agreement a pledgee may not apply collaterals for one debt in discharge of another: Oleon v. Rosenbloom & Co., 247 Pa. 250; 49 Corpus Juris 936 (Pennsylvania cases cited in note 91); note in 68 American Law Reports 912. As soon as the debt due on one contract had been discharged, the surplus proceeds thereof became immediately payable to Integrity, the assignor: McKee v. Smith, 219 Pa. 490; Foster v. Berg & Co., 104 Pa. 324, and in the hands of the finance company were impressed with a trust in favor of the assignor: Register v. Sellers, 19 Phila. 446; 49 Corpus Juris 920, section 52, and 985, section 222.

But the appellant finance company insists that the losses which it suffered on five of the contracts in suit may, in setting up the account between the parties, be set off against the claim of the trustee of bankrupt Integrity for the proceeds of the profitable contracts. We are referred to section 68(a) of the Federal Bankruptcy Act of 1898, 11 U. S. C. A., section 108a, providing that: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." The error in this contention lies in the assumption that we

have here a case of "mutual debts or mutual credits." Instead we have here on the one hand a simple debt due the finance company from Integrity on the unprofitable contracts, and on the other a trust relationship by which Integrity, now bankrupt, is the beneficiary of the surplus proceeds of the profitable contracts. These are not such mutual debts or credits within the meaning of the Federal Bankruptcy Act as can be set off against each other: Libby v. Hopkins, 104 U. S. 303; Alvord v. Ryan, 212 Fed. 83; American Brake Shoe & Foundry Co. v. New York Rys. Co., 10 Fed. (2d) 920. In the case last cited Judge HAND, of the Second Federal Circuit, said that the rule is well settled in bankruptcy that a trustee of an implied trust may not set off a claim owed by a beneficiary, and although the bankruptcy decisions depend upon the interpretation of the phrase "mutual debts or mutual credits," and therefore do not necessarily control the procedure of a court of equity, yet the general rule is equally well settled in equity.

Defendant, however, would have us bring this case within the Act of January 12, 1705, 1 Sm. L. 49, section 1, which created the right of defalcation. But a review of our cases which have construed the right is convincing that the act was never intended to apply to a situation like the present. In Valley Butter Co. v. Minn. Coöp. C. Assn., 300 Pa. 102, 104, we find the rule declared to be well established that "one who has received money in trust to dispose of it in a defined way cannot, in a suit by his principal to recover the fund, set off a debt due to himself in a matter not arising out of or connected with the trust relation." Again, in Tagg v. Bowman, 99 Pa. 376, 379, the act was specifically construed: "While a liberal construction is given to the Act of 1705 allowing set-off and defalcation of a debt of a proper character, yet, as a general rule, the debt must be due in the same right. It is inadmissible when the plaintiff's cause of action is for a breach of contract to fulfill an official or a fiduciary obligation. Although the debt may be be-

tween the same parties, yet it is not due in the same right within the true meaning of the statute. For example, the treasurer of a corporation, when sued for money in his hands as treasurer, cannot set off a debt due him from the corporation: Russel v. Church, [65 Pa.] 9." See also a later appeal in this case: Tagg v. Bowman, 108 Pa. 273. An examination of the many cases decided by this court on this subject, such as Wilson v. Boro. of Lewistown, 1 W. & S. 428; Shearman v. Morrison, 149 Pa. 386; O'Neil v. Burnett, 263 Pa. 216; Hostetter v. Giffen, 268 Pa. 531, is conclusive that the rule of permissible set-off under the Act of 1705 is the same as stated by Judge HAND (supra), and excludes the set-off appellant is now contending for.

In the case of each assignment and loan it was stipulated that from the balance due Integrity defendant was entitled to deduct a "finance charge" of three per cent on the amount advanced for the first month during which the loan ran and two and one-half per cent for each additional month prior to settlement, when the loan was repaid. The chancellor found that this was intended to be compensation merely for the use of the money loaned. Substantially all that defendant did to justify this excessive rate was to investigate the property on which the contemplated improvement was to be made, to determine whether the owner's equity in it justified proceeding with the contract, and to notify Integrity to go ahead with it, and to place on record the judgment note of the owner. When this was done Integrity performed the work and defendant loaned no money until it received the owner's acceptance card indicating that the work was completed in a satisfactory manner. The building and loan mortgages for securing the owner's payment were all negotiated by Integrity. Defendant was even reimbursed for its expenses in examining the titles. The trial court was correct in deciding that defendant did no more than any lender on collateral does in ascertaining the value of his security

before advancing the money; the rest was mere book-keeping. Consequently in making the deductions "nominated in the bond" defendant was exacting usurious interest. It has often been so decided in cases like this: Home Bond Co. v. McChesney, supra; In re Fishel, 198 Fed. 464; National Discount Co. v. Evans, 272 Fed. 570; Mercantile Trust Co. v. Kastor, 273 Ill. 332.

Defendant presses the contention that notwithstanding the usurious charges the trustee in bankruptcy is not in a position to recover them: Osborn v. First Nat. Bank, 175 Pa. 494, is authority only for the proposition that an assignee for the benefit of creditors is not a "legal representative" of his assignor within the meaning of section 5198 of the revised statutes of the United States which provides that: "In case the greater rate of interest has been paid, the person by whom it has been paid or his legal representatvies may recover back in an action in the nature of an action of debt twice the amount of the interest then paid from the association taking or receiving the same." We think that the identity of the trustee of the bankrupt estate is so closely allied with that of the bankrupt debtor that he may avail himself of the latter's right to recover payments of usurious interest. In the case just cited, this court said at page 499: "This decision is not necessarily in conflict with Monongahela Nat. Bank v. Overholt, 96 Pa. 327, as it was there held that the right of action passed to an assignee in bankruptcy. This officer like a receiver, as already said, derives his powers from the statute and the decree appointing him, and stands on a different footing than a voluntary assignee for the benefit of creditors." Under section 70 of the Bankruptcy Act of 1898, 11 U. S. C. A., section 110, the trustee in bankruptcy is vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, to all "powers which he might have exercised for his own benefit" and all "rights of action arising upon contracts or from the unlawful taking or detention of, or injury to,

his property." Retention of usury by the lender cannot, it is true, be said to be unlawful under the Act of May 28, 1858, P. L. 622, section 2, as the cases cited by defendant indicate, but certainly the right of Integrity to recover usury exacted by defendant on its contracts with the former is a "right of action" within the meaning of the Bankruptcy Act, and we hold that this right passed to the trustee in bankruptcy. This is not inconsistent with former adjudications on this and allied questions in Pennsylvania and it is also in accord with the weight of authority elsewhere: Lasater v. First Nat. Bank, 96 Tex. 345; Moore v. Jones, Fed. Cas. No. 9,768; Tamplin v. Wentworth, 99 Mass. 63; Ripple v. Mortgage & Acceptance Corp., 193 N. C. 422. See also Wheelock v. Lee, 64 N. Y. 242; Reed v. American-German Nat. Bank, 155 Fed. 233; and In re Stern, 144 Fed. 956.

The Act of May 28, 1858, referred to above, limits the time during which actions may be brought to recover usurious interset voluntarily paid to a period of six months from the time of such payment, and defendant asserts that since these proceedings were not begun until March, 1929, more than two years after the petition in bankruptcy, the right of recovery had then expired by limitation. The learned chancellor's discussion of this question is sufficient to dispose of it. He said that he "would regard the settlement of an account which included a usurious charge, and the acceptance of payment of a balance based upon such a charge as a payment of it. But there must be such an approval of the usurious credit. A mere claim by the creditor of usury in the statement of the account on its own books, not consented to by the debtor, could not be regarded as payment and approval of the charge." The Act of 1858 requires a voluntary payment for operation of the period of limitation, and here we can discover nothing to indicate any assent on the part of Integrity or the trustee in bankruptcy to defendant's retention of the usurious charges out of the proceeds of the individual contracts

received from the property owners. All that defendant did was to settle the individual accounts with the owners and write the proceeds on to their books. Settlement was made of only two of the accounts before the petition in bankruptcy was filed. No settlement was ever made with Integrity or its trustee. No surplus was ever remitted and there was no account stated between the parties from which the consent of Integrity or the trustee to payment of the usurious charges could be inferred. In view of these facts the limitation of the Act of 1858 could not be invoked by the defendant in these proceedings. Nor does the recent Act of April 27, 1927, P. L. 404, as amended by the Act of May 8, 1929, P. L. 1647, prohibiting corporations from setting up the defense of usury, have any application to defendant in this case. The Act of May 8, 1929, expressly provides that this act shall not apply to any action then pending or to any obligation executed or assumed by the said corporation prior to April 27, 1927, and the obligations in suit were all incurred prior to 1927. Moreover, this act on its face applies only to a corporation which, when sued, seeks to avoid an obligation on the ground of usury, whereas it has no application to recover payments in excess of the legal rate. The result must be, as determined by the trial judge, that plaintiff is entitled to recover all the surplus proceeds of the assigned contracts held by defendant in excess of the amount to which the latter is entitled as interest at the lawful rate of six per centum on the amounts loaned.

In making up the account between the parties the chancellor included in the decree in plaintiff's favor, in the case of three of the individual contracts, the amounts of certain notes which defendant took from the property owners in settlement of the contracts with them, when it found that the intended mortgages could not be obtained for the requisite amounts. The judgment now includes these sums just as though they were cash received by defendant from the home owners, although the notes

in fact still remain in the hands of defendant and are still unpaid. As to these items, the account has been incorrectly set up. The acceptance of these notes from the obligors on the contracts could not have prejudiced the bankrupt estate in any way. The restraining order of the bankruptcy court enjoined defendant from proceeding with the further collection of the moneys due on these contracts, thus preventing it from taking any steps to realize on these notes accepted in settlement. Whatever may be said regarding defendant's right to tender the notes to the trustee in bankruptcy or obtain a modification of the order sufficient to permit it to proceed with the collection, it was not required by law or by any agreement with Integrity to do these things, and the fact is not disputed that defendant has never been paid the proceeds of these notes. The payments on the contracts were guaranteed by Integrity, not by defendant. The decree should be modified so as to exclude the amount of these unsatisfied notes still in defendant's possession, at least to the extent that they augment the surplus of proceeds in plaintiff's favor; and it should be ordered that defendant assign these notes to plaintiff, or hold them, or their proceeds when collected, in trust for plaintiff.

The remaining point to be disposed of is the contention that, in view of the restraining order of the bankruptcy court, the court below should not have decreed the payment of these sums to plaintiff in contravention of the injunction. The conflict between the jurisdictions of the two courts is more formal than substantial, since the restraining order was for the express benefit of plaintiff and at his behest, for the purpose of enabling this suit to be brought, and upon the adjudication herein defendant may immediately take appropriate action to have the injunction dissolved.

The decree of the court below, except as modified above, is affirmed. Costs to be paid by appellant.