COMMERCIAL SECURITY CO. v. HOLCOMBE.

In re E. E. FORBES PIANO CO.

(Circuit Court of Appeals, Fifth Circuit. January 7, 1920.)

No. 3429.

1. BANKRUPTCY ⊙⟶210—COURT HAS JURISDICTION TO ADJUDICATE LIEN CLAIM.

An order of a referee, requiring a holder of notes and accounts receivable of a bankrupt to turn the same over to the trustee for collection, transferring the claim of the holder to a lien to the proceeds, and expressly reserving the right to afterwards pass on the validity of the claim, the holder being present by attorney and assenting, *held* to give the bankruptcy court jurisdiction over the claimant to adjudicate its claim.

2. SALES ⊙⟶6—CONTRACT CONSTRUED AS PLEDGE AND NOT PURCHASE OF PAPER.

Transactions by which bankrupt, a dealer in musical instruments, transferred paper taken from its customers to claimant under a contract in accordance with which claimant advanced 70 per cent. of its face and agreed to pay 20 per cent. more on collection, where bankrupt was required to pay interest on such sums, to meet payments on the paper when due, and collected and kept the proceeds of actual payments by the makers, with the privilege of substituting other acceptable paper, or of taking up any paper by payment, *held* not sales of the paper, but a pledging as collateral for loans.

3. USURY ⊙⟶57—REPLEDGING COLLATERAL FOR PLEDGEE'S USE NOT BROKERAGE TRANSACTION, WARRANTING CHARGE OF USURIOUS RATE.

That a pledgee of collateral repledges the same to secure money borrowed by itself and used in carrying on its business does not make it the agent of the pledgor in such transaction, nor justify the taking of usurious interest.

4. USURY ⊙⟶72—PLEDGE OF NOTES IN CONTINUOUS DEALING UNDER CONTRACT FOR LOANS NOT SEPARATE TRANSACTIONS.

Where a large number of notes were pledged from time to time to secure loans under a contract for continuous dealing, which gave pledgor the right to take up or replace any note separately, the transaction was not for that reason a separate one as to each note, but a single continuous transaction of lending, and was not closed as to a note when it was taken up or replaced by another, so as to cut off the defense of usury.

5. USURY ⊙⟶100(1)—ONLY FINAL SETTLEMENT IS BAR TO DEFENSE.

Under a contract for loans on pledged notes, by which pledgee advanced 70 per cent. of the aggregate face value of notes pledged and agreed to pay 20 per cent. additional on payment, with right in the pledgor to pay and take, up any single note, where on such payment of a note no part of the retained 20 per cent. was paid, the transaction was open to the defense of usury until final settlement.

Appeal from the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

In the matter of the E. E. Forbes Piano Company, bankrupt; J. H. Holcombe, trustee. From an order of the District Court, the Commercial Security Company appeals. Affirmed.

Forney Johnston and W. R. C. Cocke, both of Birmingham, Ala., for appellant.

Borden Burr, Claude D. Ritter, and D. K. McKamy, all of Birmingham, Ala., for appellee.

Before WALKER, Circuit Judge, and FOSTER and EVANS, District Judges.

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. This is an appeal from a decree confirm-·
ing an order made by the referee in bankruptcy which adjudged that
the appellant, Commercial Security Company, an Illinois corporation,
restore and pay back to the appellee, the trustee in bankruptcy of E.
E. Forbes Piano Company, the sum of $12,893.41, which amount had
been paid to the appellant pursuant to an order which provided that
the court reserved the right, for the purpose of a correct, proper, and·
legal administration of the estate in bankruptcy, to order the restora-
tion in part or in whole of sums so paid; that the appellant surrender
and deliver to the trustee in bankruptcy designated assets and papers
found to belong to the bankrupt estate; and that the appellant pay
the costs of the proceeding, instituted by the trustee in bankruptcy, in
which the order in question was made. The order followed findings
to the effect that transactions by which the appellant had acquired
from the bankrupt, which had been engaged in the business of leasing
and selling pianos and organs, notes and other obligations made to
the latter by its customers, were in the nature of pledges or hypotheca-
tions to secure the amounts of loans made by the appellant to the
bankrupt at usurious rates of interest, and that payments made to the
appellant prior to the bankruptcy amounted to $4,062.71 in excess of
the amounts lent by it to the bankrupt with legal interest thereon.

[1] In behalf of the appellant it is contended that the court had not
acquired jurisdiction of the appellant for the purpose of making such
an order as the one appealed from. The appellant was present by its
attorneys of record at the first meeting of the bankrupt's creditors.
At that meeting, with the consent of all parties present, the referee
made an order which contained the following provisions:

"(3) The said trustee is authorized, empowered, and directed to proceed to
collect all accounts, notes, claims, and demands receivable, and to incur the
reasonable expenses thereof, and wherever any person, firm, or corporation
has, or claims to have, any lien or claim upon any such accounts, notes,
claims, or demands receivable, the lien or claim of such person, firm, or cor-
poration shall be transferred as of this day, and in precisely the same plight
and condition as such lien or claim now stands, to the money or other thing of
value which may so be collected by the trustee, and if anything but money be
so collected and resold or converted, then to such and subsequently received
proceeds; but as to each such collection or substitute or the proceeds thereof,
all such expenses, including an equitable apportionment of the general costs
and expenses of the administration and of this proceeding, the part represented
by such lien or claim shall bear its own burden or part and the excess or
balance remaining of each such part upon which lien or claim is or may be
asserted shall be subjected to the satisfaction of such claim or demand after
the legality thereof shall be finally determined by this court; but that any
person, firm, or corporation, including the trustee, who or which may consider
himself or itself aggrieved, shall have the right of review, appeal, or benefit of
any or all appellate proceedings which otherwise are now authorized by
law.

"The intent and purpose of the foregoing and of the next succeeding
paragraph is to authorize and empower the trustee to collect and liquidate all
of the assets and estate of the bankrupt, or in which the bankrupt or this
estate has any claim, title, or right, legal or equitable, and to impose upon
that portion of each collection upon which any other person, firm, or cor-
poration has, or claims to have, any lien, claim, or demand a proportionate
share of the expenses of making such collection, including the necessary gen-
eral costs and expenses of administration under this proceeding in bank-

ruptcy, but without prejudicing and without adjudicating at the present time the legality or validity or the extent of any such claim or demand of any such person, firm, or corporation, but as to each item of balance or excess over the claim or demand of each and every such person, firm, or corporation, respectively, shall stand in precisely the same plight and condition as such claim or demand now stands in reference to the property or thing from which the excess or balance may be derived. The trustee shall from time to time make application for instructions and orders for distribution, including these balances upon which there may be liens or claims, or of or concerning which he has any information, whether obtained before bankruptcy or afterwards, that any person, firm, or corporation has. or claims to have, any lien, claim, or demand, of the hearing of which applications the person, firm, or corporation shall be given ample notice by the court; and any such person, firm, or corporation may at any time itself make such application, and no matter what the form of application, whether by petition, motion, or otherwise, the making of such application shall, for the purpose of the hearing and of the disposition thereof, be construed and considered as if having been made by the trustee as the actor in procuring the action of the court with reference thereto.

"(4) Commercial Security Company, Hamilton Investment Company, and Empire Security Company, each of Chicago, Ill., and J. H. Shale trustee of New York City, each claim to be the holder of certain papers or security originally delivered to them, respectively, by the bankrupt in the conduct of its business, each of which securities held by them, respectively, purports to cover, or carry title to, certain musical instruments described in each such paper and each of which consents, with the same provisions, limitations, and burdens expressed in numbered paragraph next supra, that the said trustee proceed to collect from the obligors under said papers, using his best judgment in making such collections in money or any other thing of value from such obligors.

"Nothing herein in this paragraph, or in this order anywhere contained, shall be construed as a general appearance by said Commercial Security Company, Hamilton Investment Company, Empire Security Company, J. H. Shale, trustee, Bank of Cody, Smith & Barnes, Bush & Gerts, and French & Sons, the appearance of whom is limited expressly to the making of this order and the terms and provisions hereof.

"(5) The trustee will keep a separate account of all collections, whether of money or other thing of value, and of all substitutes for such other things of value, in each instance where any lien or claim is made, or which has come to his attention before or after bankruptcy and the proceeds of such collections shall be distributed as herein provided, and as may be hereafter ordered by this court in this proceeding."

Following the making of the agreement evidenced by the order just quoted from, the appellant delivered to the trustee sundry notes for pianos and organs and piano and organ leases and mortgages given to the bankrupt and acquired from it by the appellant, and thereafter for more than a year continued to deliver to the trustee for collection all such paper called for by the trustee, and the trustee proceeded to make collections on those papers and on other claims in favor of the bankrupt. After the trustee had in this way realized a considerable sum of money, and before any decision by the court on the question of the legality of appellant's claim to notes, etc., acquired by it from the bankrupt had been made, the court, on the petition of the appellant and others, made the above-mentioned order, under which the trustee paid to the appellant the amount which the decree appealed from ordered the latter to restore and pay back. By the terms of the order in pursuance of which the appellant delivered to the trustee notes, etc., made to the bankrupt by its customers, the appearance of the appellant in the bankruptcy proceeding was limited "to the making of this order and

the terms and provisions hereof." Included in the "terms and provisions" referred to were an authorization to the trustee to collect all accounts, notes, etc., payable to the bankrupt to which the appellant asserted any claim, and a consent that the question of the legality of the appellant's claim to those notes, etc., or collections thereon, be determined by the court making the order consented to. It does not seem to us to be fairly open to question that the appellant submitted itself to the jurisdiction of the court, so far as concerns the enforcement of its agreement to deliver to the trustee notes, etc., made to the bankrupt and held by the appellant, and the determination of the legality of appellant's claim to or against assets administered or agreed to be administered by the trustee in bankruptcy. The decree appealed from did not embrace any matter as to which the appellant had not consented to the court's exercise of jurisdiction. Plainly the court's jurisdiction so assented to was not exhausted by a payment made to the appellant under the above-mentioned order, containing a reservation to the court of the right to require a repayment to the trustee of the sum so conditionally disbursed.

[2] During several years, commencing in 1910, the appellant had dealings with the bankrupt, with the result that the former acquired many so-called "piano contracts" made to the latter by its customers for the whole or deferred parts of the price of pianos or organs sold or leased. Those dealings were, except as stated below, in pursuance of the terms of three substantially similar written contracts entered into successively between the appellant and the bankrupt—the first one on August 16, 1910, for the period of one year from its date; the second one on August 16, 1911, for a like period; and the third one on August 16, 1912, which provided that it should remain in force until terminated by two months' written notice—such termination not to affect or impair any obligation given under the contract then in force. Those contracts did not obligate the appellant to acquire paper offered by the bankrupt, but stated the terms on which appellant would acquire such offered paper as was acceptable to it. By the terms of the contracts mentioned the transactions provided for were called "sales"; the price stated being 90 per cent. of the face value of the paper accepted, 70 per cent. of such face value being payable in cash, and 20 per cent. thereof to be retained by the appellant until the assigned paper was paid off, the appellant having the right to apply any money in its possession belonging to the bankrupt to the payment of installments due on assigned paper in default, the bankrupt agreeing promptly to repurchase at par of the uncollected part of paper in default, or to substitute therefor other like acceptable paper of equal value and to pay in cash for such portions as shall then be in default. The bankrupt was to pay all expenses of making collections on paper assigned, and guaranteed the payment of such paper. It was stated in the contracts disclosing the basis of dealings between the parties that they were made upon representations in writing concerning the financial responsibility of the bankrupt.

While those contracts provided that the subjects of them were to be contracts drawing interest at the rate of 6 per cent. per annum, the

provision as to the rate of interest called for by assigned paper was ignored; the practice followed being that the appellant accepted paper offered without regard to the rate of interest it bore, some of it bearing no interest at all, and most of it bearing interest at the rate of 8 per cent. per annum. The course of dealing was as follows: From time to time the bankrupt made offerings of a number of "piano contracts," listed and serially numbered on forms provided by the appellant. Upon acceptance of the papers so offered the appellant would pay 70 per cent. of the amount unpaid thereon, by a deposit in a Chicago bank to the credit of the bankrupt, and would set aside an additional 20 per cent. in what was termed a reserve fund. Every month the appellant sent to the bankrupt a bill for interest on the "entire line carried" at the rate of 6 per cent. per annum, deducting interest at the same rate on the amount in the 20 per cent. reserve fund. The bankrupt would pay the interest called for by the bill, without regard to what it had collected from its customers on the paper assigned. Twice a month the bankrupt would remit to the appellant the amount due on paper transferred. If the amount due each month was not paid by the makers of the papers, the bankrupt had to pay such amounts out of its general funds. Moneys collected by the bankrupt from its customers was deposited in bank to its own credit, and, with the knowledge and consent of the appellant, was treated as belonging to the former. Whenever a transferred paper was in default, the bankrupt substituted other like paper or paid in cash the amount in default. The appellant had no dealings with the makers of the transferred paper, not even notifying them of its transfer, and never attempted to collect from them the amount due on such paper in default.

That the transactions in question were not sales, but were loans secured by the transferred paper as collateral, is persuasively indicated by a number of attending circumstances, among them the following: That the bankrupt had the right to reacquire the paper by paying the amount it called for, with interest thereon, the aggregate being an amount in excess of that paid, or in any event to be paid, by the appellant; that the bankrupt was to, and did, pay all expenses of making collections on the paper, and was treated as the owner of it, except in so far as was required to give the transfer the effect of enabling the appellant to hold it until the amount it called for, with interest thereon, was paid to the appellant; that the bankrupt paid 6 per cent. per annum interest on the amounts owing on the paper, whether it bore interest or not; and that as to most of the transferred paper, namely, that part of it which bore interest at a rate in excess of 6 per cent. per annum, the bankrupt was recognized, after the transfers were made, to be the owner of part of the amount owing on such paper, the right to retain as its own property, free of any claim in favor of the appellant, so much of the interest collected as was in excess of 6 per cent. being admitted.

The nature of a transaction is determined, not by the name given to it by the parties, but by its operation and effect. That a transfer of paper evidencing indebtedness payable after the date of the transfer, and which does not include any interest, is not a sale, is quite obvious,

when the transferor is required to pay to the transferee interest on the amount owing on such paper before anything is payable by maker, and the transferor has the right to reacquire the paper by paying to the transferee the sum it calls for with interest thereon. That such transactions as those under consideration are loans has been decided in several recent cases, among them the following: In re Grand Union Co., 219 Fed. 353, 135 C. C. A. 237, certiorari denied Hamilton Investment Co. v. Ernst, 238 U. S. 626, 35 Sup. Ct. 664, 59 L. Ed. 1495; Home Bond Co. v. McChesney, 239 U. S. 568, 36 Sup. Ct. 170, 60 L. Ed. 444; National Trust & Credit Co. v. F. H. Orcutt & Son Co., 259 Fed. 830, —— C. C. A. ——. The contract which was the basis of the dealings between the parties in the first-cited case, a copy of which is set out in the report of that case, is identical in its terms with the above-mentioned contracts between the appellant and the bankrupt.

[3] In behalf of the appellant it is contended that the evidence as to the disposition made of the transferred paper by the appellant discloses a material difference between the facts of the instant case and those of the cases above cited. That evidence showed that the appellant, by using the transferred paper as security for bonds issued by it, acquired the money required to enable it to carry on the business of purchasing and marketing such paper as that offered by the bankrupt. It is urged that, though the difference between the appellant's possible outlay and what it was to realize from the transferred paper amounts to more than legal interest, the appellant was entitled to contract for the payment of such difference, because it included compensation in the way of brokerage for the service rendered in marketing the paper. In pledging the transferred paper to secure its own obligations the appellant acted for itself, not as a selling or borrowing agent of the bankrupt. It acquired and held that paper in its own right, whether as owner or as pledgee. As to that paper the relation of principal and agent did not exist between the bankrupt and the appellant. The latter's exaction of more than legal interest is no more justifiable than would be a banker's reservation of more than the allowable discount on the ground that he had to rediscount paper so acquired to be enabled to carry on the business of discounting. One cannot charge another for a service he renders to himself. There can be no brokerage, where there is no broker or agency. Home Bond Co. v. McChesney, supra.

[4] It is contended that each transfer of a piece of "piano paper" was a separate transaction, and that as to such of those transactions as were settled by payment of the amount called for by the paper, or by substituting other paper in lieu thereof, they were so closed as not thereafter to be open for the purpose of the elimination of the usurious charges which figured in them. It is true that a separate account was kept as to each paper transferred, which showed what was paid on that particular paper (all payments being on specified paper), when it was in default, and when it was redelivered to the bankrupt upon payment in full, or upon default and other paper being delivered in lieu of it. From the fact that an account is kept as to each piece of paper pledged as collateral, so as to disclose the occurrence of any default

in the payment of the debt evidenced by that paper, and to indicate when the substitution of other collateral is desirable, it does not follow that that paper is unrelated to other paper similarly pledged, or that the pledging of it was a transaction separate and independent of the pledging of other like paper, either at the same time or in the course of continuing dealings consisting of advancements made on such security as it is offered from time to time. The dealings between the parties were such as to afford ground for treating them as constituting one continuous transaction of lending or advancing money secured by successive pledges of assigned paper; there being substitutions of collateral from time to time, part of the amount payable by the appellant for or on any paper accepted being retained by it with the right of applying what was so retained on debts evidenced by other like paper. Dorothy v. Commonwealth Co., 278 Ill. 629, 116 N. E. 143, L. R. A. 1917E, 1110.

[5] Whether the dealings are so regarded or not, or whether the acquisition of each piece of paper or the acceptance of each offering of a number of such papers together is considered to have been a separate transaction, a material feature of each of the transactions was the reservation by the appellant of 20 per cent. of the amount owing at the time on the paper offered and accepted. Such a transaction could not properly be regarded as settled and closed so long as the reserved 20 per cent. is not paid or applied pursuant to requirements of the contract. Until that is done an obligation imposed on the appellant by the transaction remains undischarged. The practice of redelivering transferred paper when paid off, without paying or applying the reserved part of the amount it called for, indicates an absence of intention to close the transaction by which that paper was acquired, and was hardly consistent with the existence of an understanding that that transaction was separate from and independent of other similar ones. To support the claim made in behalf of the appellant that many of the transactions had been finally settled and closed, with the result that they could not be reopened because of usury, it was incumbent on it to show that the amount it reserved when the paper was acquired by it had been paid or accounted for. There was no evidence negativing the conclusion that the amounts so reserved by the appellant remained in its hands without having been applied in pursuance of the contract. In the absence of such evidence it may be presumed that the transactions remained open so far as concerns the payment or application of the amounts retained or reserved by the appellant.

The transactions remaining open and unsettled as to a material feature of them, they were open for the purpose of eliminating usurious charges involved in them, and of ascertaining whether the secured debt or debts, with legal interest thereon, had been paid, with the result of extinguishing appellant's right to the pledged collateral. The evidence was such as to justify the finding that the appellant had been paid the amounts owing to it, including legal interest, before its receipt of the amount ordered to be repaid. As the decree appealed from did not require the payment by the appellant of the amount found to have been that of the overpayment to it prior to the bankruptcy, there

is no occasion to inquire as to the propriety of the amount of that finding.

What has been said disposes of the grounds of complaint against the decree appealed from which seem to us to call for discussion or comment. The conclusion is that on no ground urged is that decree subject to be reversed.

It is affirmed.