# LOUIS W. WALLACK*
*vs.*
# WALLACK BROS., INC.

Superior Court    New Haven County    File No. 57512

---

*See Wallack vs. Wallack Bros., Inc., 7 Conn. Sup. 384.

MEMORANDUM FILED MAY 28, 1940.

*Samuel M. Silver*, of New Haven, for the Receiver.

*Evans & Markle*, of New Haven, for Fuller-Sherman Co.

INGLIS, J. This claim is based upon a written contract entered into between the claimant and the defendant corporation. The final act which made this contract a binding obligation on the parties was performed in New York on February 24, 1938. Prior to that time the contract had been solicited from the defendant corporation by one Henri Schilsky, who represented the claimant but had no authority to bind it to such a contract and it had been signed by the defendant corporation. It was not signed by the claimant, however, until February 24, 1938, when it was executed by the claimant in New York.

By the terms of the contract it was agreed that the claimant should finance the sales of the defendant corporation by advancing to it approximately 80 per cent of the face of such accounts receivable as the defendant should assign to it. Upon such advances, there should be made a "service charge and factoring commission" of two per cent and in addition interest at the rate of six per cent per annum until the advances were repaid. The accounts receivable were then to be collected by the defendant as the agent of the claimant and the full amount collected remitted forthwith to the claimant. Interest at the rate of six per cent per annum was to be allowed to the defendant on all amounts collected on the accounts and paid over to the claimant over and above the amount advanced plus the claimant's service and interest charges to date of payment and the account between the parties was to be adjusted at the end of each month. The accounts receivable had a maturity of either 30, 60 or 90 days and averaged somewhat less than 60

days, but as between the claimant and defendant a 30-day grace period was allowed so that, on the average, the money advanced by the claimant was due to be repaid in less than 90 days.

As a matter of practice under the contract the money to be advanced by the claimant was paid over to the defendant in New York and the repayments of such advances were also in New York. The assignments of the accounts receivable were executed in Connecticut but were delivered to the claimant in New York. In view of the fact that this practice was substantially uniform throughout the term of the contract it is to be concluded that such practice was contemplated by the terms of the contract itself.

Under the contract it was contemplated that the debtors of the defendant would not be notified of the assignments of their accounts and as a matter of fact they were not notified until after the appointment of the receiver of the defendant.

Upon these facts and the other facts in evidence the following conclusions are reached:

1. The nature of the transactions entered into under the contract was not one of purchase and sale of accounts but rather of a loan of money secured by the assignment of accounts receivable. *Continental Credit Co. vs. Ely*, 91 Conn. 553, 559; *Barker Piano Co. vs. Commercial Security Co.*, 93 id. 129; *Kelter vs. American Bankers' Finance Co.*, 306 Pa. 483, 160 Atl. 127, 82 A.L.R. 999; *Commercial Security Co. vs. Holcombe*, 262 Fed. 657 (C.C.A. 5th); *Mercantile Trust Co. vs. Kastor*, 273 Ill. 332, 112 N.E. 988.

2. All of the acts done pursuant to the contract constituted one continuous transaction rather than a succession of separate independent advances of money made or assignments of accounts so that none of the advances and repayments are closed transactions. *Commercial Security Co. vs. Holcombe, supra.* (This conclusion has a bearing not only on the claim of usury, which, in view of other conclusions reached, is unimportant, but also upon the question as to the proper method of figuring the claim.)

3. In view of the fact that the two per cent "service charge" was in essence, not for any services rendered, but rather for the use of the money, under Connecticut law, the transaction was usurious. *Douglass vs. Boulevard Co.*, 91 Conn. 601.

4. The New York law, however, provides: "No corporation shall hereafter interpose the defense of usury in any action." Cahill's Consol. Laws of New York, chap. 21, §374. The defendant here is a corporation and therefore, as such, would come within the terms of this statute.

5. The New York courts have interpreted this statute as making substantive law and not remedial law only. It has accordingly been held that the effect of the statute is that corporations are exempted from the usury law and no loan made to a corporation can be usurious. As a further consequence of this interpretation of the statute, it is held that the receiver of a corporation may not set up the defense of usury. *Rosa vs. Butterfield*, 33 N.Y. 665. Accordingly, as a matter of substantive law, the present arrangement between the parties was not usurious in New York.

6. This contract was entered into in New York and accordingly the place of the contract is New York. *Supreme Colony vs. Towne,* 87 Conn. 644. It is fundamental therefore, that its validity and interpretation is to be governed by the laws of New York.

7. In so far as the advances of money by the claimant and the repayment of these advances by the defendant are concerned, that much of the performance of the contract was to be in New York. For that reason, the law of New York controls the question of the validity of the provisions of the contract relating to performance. *Craig & Co. Ltd. vs. Uncas Paperboard Co.,* 104 Conn. 559; *Merchants' & Manufacturers' Securities Co. vs. Johnson,* 69 F. (2d) 940 (C.C.A. 8th).

8. Usury laws do not establish public policy in the sense that the courts of one state will refuse to hold valid a contract entered into and to be performed in another state simply because that other state permits a higher rate of interest than the state of the forum and the contract calls for that higher rate. 66 C.J. Usury §33.

9. It is true that the cases seem to hold that a contract usurious in the state of the forum will not be enforced even though valid where it was entered into if the parties went into the other state to make their contract with the intent of evading the law of the state of the forum. Such, however, was not the situation here. There is no evidence that the parties realized that their contract might have been invalid under

Connecticut law. On the contrary, it was entirely natural for them to enter into their contract and provide for its performance at the office of the claimant, which happened to be in New York, and there is no reason to suspect that they made their contract a New York contract in order to escape the Connecticut usury law. On this score, therefore, there is no reason why this court should not let the parties rest on the New York law. *Seeman vs. Philadelphia Warehouse Co.*, 274 U.S. 403, 71 L. ed. 1123.

10. This case is distinguishable from *Stack vs. Detour Lumber & Cedar Co.*, 151 Mich. 21, where to a similar transaction as the one involved in this case the court applied the usury law of the forum although the *lex loci contractus* (Illinois) provided that a corporation might not set up usury as a defense, because, in that case, it appeared that the Illinois courts had interpreted that statute as simply procedural. Here we have to do with a New York statute which is interpreted as making substantive law.

11. The contract in question not being usurious under the laws of the State of New York, it is not to be held usurious in this proceeding.

12. The situs of the assignments of the accounts receivable is probably Connecticut. Although in most intances the assignments were delivered to the claimant in New York, they were executed in Connecticut, the domiciles of the debtors and of the creditor and assignor were Connecticut and if the assignment were to be enforced it would have to be in Connecticut. 5 C.J. 941 Assignments §110 *et seq.* Accordingly, the validity of the assignments is to be tested by the Connecticut law.

13. Although it was formerly true under Connecticut law that, as against an attaching creditor of a creditor who had assigned an account, the assignment was not good unless the debtor has been notified of the assignment, the law is now different. As the law now is, it is held that the assignment of an account is complete when it is made without notification to the debtor and that thereafter the assignor has no interest in the account left to be attached by his crediors and that, therefore, unless something has occurred which creates a superior equity in the attaching creditor the assignment holds as against him whether the debtor has been notified of the assignment or not. *Travelers Insurance Co. vs. Mayo*, 103 Conn. 341; *Ciezynski vs. New Britain Transportation Co.*, 121 id. 36.

14. In the present case the appointment of the receiver had the same effect as the attachment of the defendant's assets by its creditors would have had and the receiver now stands in the shoes of the creditors. One of the creditors for a small amount testified that he had no knowledge before the receivership that the accounts had been assigned to the claimant. It does not appear, however, that either he or any other creditor had extended credit to the defendant on the strength of these accounts. Incidentally, it is to be borne in mind that not all of the defendant's accounts receivable were assigned to the claimant. Failing any evidence which would justify a finding that the creditors of the defendant had extended credit to the defendant believing that its accounts receivable had not been assigned and relying on those accounts as an asset to meet their claims, there can be no equity in them superior to the right of the claimant to hold the accounts which have been assigned to it. Accordingly, under Connecticut law as it now stands, the assignments to the claimant are valid to hold those accounts for it even though the debtors had not been notified prior to the defendant's receivership.

15. If the validity of the assignments depends upon the law of New York, the same result must be reached because it is clear that under the law of that state an assignment is valid as against both the assignor and his creditors without notification to the debtor whose account has been assigned. *Fortunato vs. Patten,* 147 N.Y. 277.

16. On the whole case it is concluded that the claimant has a valid claim for money loaned and that it is entitled to hold as security for that claim the accounts receivable assigned to it and in its possession at the date of the receivership. The statement rendered by the claimant as of August 31, 1939, shows a balance due it of $12,385.06. Interest on this amount to the date of receivership amounts to $12.39. Accordingly, its claim as of the date of receivership was $12,397.45.

Accordingly, it is ordered that the claim of Fuller-Sherman Company, Inc. be allowed in the amount of $12,397.45 as a secured claim. It is further ordered that the receiver turn over to the claimant all sums of money which he has collected or shall in the future collect on account of the accounts receivable which were assigned to the claimant until the sums realized on those accounts satisfy the amount of that claim with interest thereon at the rate of six per cent per annum from the date of receivership until paid.

Because of the fact that about $5,000 was collected by the defendant before receivership on account of the accounts receivable assigned to the claimant and never turned over to the claimant, the probability is that the security held by the claimant will not be sufficient to liquidate the indebtedness. If such occurs either for the reason suggested or for any other reason, the amount realized on that security should be applied first to the payment of interest which may accrue on the claim after receivership and then to the principal amount of the claim. The balance of the principal of the claim then remaining unpaid is then allowed as a general claim.