INDEPENDENT FOODS, INC., Plaintiff-Appellant, v. LUCAS COUNTY SAVINGS BANK, Defendant-Appellee

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20315. Decided July 15, 1946.

G. L. Livingstone, Cleveland, for Plaintiff-Appellant.

Boyd, Brooks & Wickham, Cleveland, for Defendant-Appellee.

## OPINION

By MORGAN, J.

The defendant appellee recovered a judgment in the common pleas court on its cross-petition against the plaintiff appellant in the amount of $5339.38 with interest thereon from October 10, 1945. From this judgment the plaintiff appeals.

The record discloses that beginning in May, 1942 and continuing until December, 1944, the defendant bank made a series of loans to the plaintiff, a wholesale grocer, which were evidenced by demand notes for each loan.

The loans were made pursuant to an oral contract between the parties, entered into in May, 1942. The defendant bank claims that this contract was modified in June, 1942, and the trial court so found in its "Conclusions of Fact."

In the view taken of this case by a majority of this court, the exact terms of the contract between the parties are not important inasmuch as the only defense of the plaintiff borrower is that the compensation to be paid to the defendant the lender, was usurious.

It is conceded that the total interest and charges payable to the bank considerably exceeded the legal rate of 8% interest. The loans were made to enable the plaintiff to finance the purchase of canned goods and other groceries. All purchased goods were placed in a warehouse by the plaintiff accompanied by a tally sheet giving a description and cost of the goods. The defendant loaned to the plaintiff 75% of the cost of the goods as shown by the tally sheet and the defendant received therefor the plaintiff's demand promissory note for the amount loaned which was secured by a warehouse receipt for the goods issued by the warehouseman.

Payment was made to the bank on the sale of warehouse goods of 77½% of their value. 75% was to be credited on the principal of the note and 2½% was to be used by the bank to "pay the interest and charges" on the notes. At the end of each 30 days any overplus in the hands of defendant bank over and above the "interest and charges" was to be remitted to plaintiff borrower.

During the period between May, 1942 and December, 1944, 269 separate purchases by plaintiff were handled in the above manner and plaintiff executed and defendant received 269 demand notes in an aggregate amount of $342,531.41 evidencing loans for such amount.

As to the compensation to be received by the defendant bank we accept the conclusions of fact of the trial court. By the oral agreement of May, 1942, the plaintiff agreed to pay the defendant one-half of 1% on the face or tally sheet value of the warehoused goods on which defendant had loaned to plaintiff 75% of their tally sheet value and interest at the rate of one-half of one percent per month computed on the average daily balance of indebtedness of plaintiff to defendant. In June, 1942, the defendant notified plaintiff of a change in the arrangement and that thereafter the charges would be a discount or a new loan fee of one-half of one percent of the amount of the aggregate value of the goods warehoused to be charged and deducted at the time of granting new loans; an interest charge of one-half of one percent per month to be charged, not on the average indebtedness, but on the average daily balance of warehouse receipts outstanding; and also a renewal fee of one-half of one percent per month to be charged each month on outstanding warehouse receipts. From and after June, 1942, defendant continued to make financing charges including interest as provided by the modified agreement.

Plaintiff claims that the total charges including interest amounted to 24% on the loans made. The defendant concedes and the trial court found that the total compensation to be paid the defendant amounted to 18% divided as follows:

Discounts 3-3/10 %

Interest 8%

Renewal fees 6.7%.

Plaintiff's defense is that the transaction between the parties is tainted with usury. If the arrangement between the parties was usurious it will not be necessary for this court to consider the many disputed questions as to the accounting between the parties to which the evidence in the case was principally directed.

The trial court as its second conclusion of law found that "the financing charges made by the defendant against plaintiff including interest were properly made by the defendant and assented to by the plaintiff and were reasonable under all the circumstances and were not intended to be and are not usurious."

This conclusion of law is based on paragraphs 11 and 12 of the findings of fact by the court, as follows:

"11. Having in mind that over 200 separate notes were handled by defendant, secured by warehouse receipts covering a vast amount and variety of commodities bought and sold by plaintiff without reference to and with no attempt to retire individual notes in the order of their making, and that an unusual amount of detail in computation and accounting was required of defendant in handling these loans, and in view of the elements of the aggregate amount of loans and the time, expense and risk involved, the court finds that the charges so made by defendant were not unreasonable under all the circumstances and were accepted and assented to by plaintiff.

"12. There is no evidence that the financing charges so made were intended by the parties, or either of them, as a guise or subterfuge for the charging of usurious interest."

We shall first consider paragraph 11 of the findings of fact.

That the charges in this case "were accepted and assented to by plaintiff" is no defense to the claim of usury. Likewise the finding that the "charges were not unreasonable under all the circumstances" is no defense.

The question to be determined is not whether the charges were reasonable or unreasonable but whether the charges exceeded the interest allowed by the usury statute.

It is recognized that the payment by the borrower to the lender of expenses actually incurred and which are incident to the loan, does not cause the loan to be usurious. The nature of such expenses is shown in **40 O. Jur. 851**, where it is stated:

"It is entirely obvious that a lender is under no obligation to bear the expenses properly incident to the loan. If loss and expense and delay are expected to occur so as to reduce the interest an allowance may be made for them and it will not be usurious even though it results in greater profit than lawful interest. The items of expense thus allowed include the expense of examining and appraising security and passing upon and perfecting the borrower's title thereto, preparing, acknowledging and recording papers, taxes on mortgaged property or on debt and mortgage, etc."

See also note in 63 A. L. R. page 831.

The expenses, however, set forth in paragraph 11 of the finding of facts, are not of such character. Insofar as the defendant's expenses were increased by the fact that there was "no attempt to retire individual notes in the order of their making" such was due to the defendant's own choice inasmuch as the bank, subject to statutory limitations, was in a position to dictate the terms and conditions of the loans.

That an "unusual amount of detail on computation and accounting was required of defendant in handling these loans" was a bookkeeping expense and therefore was incurred by the lender for his own benefit. We have found no case where the lender was permitted to charge an additional amount for additional expense incurred in keeping its own books and records.

New York Credit Men's Assoc. v. Schnur, 89 Federal 2nd 681 (Circuit Court of Appeals 2nd Circuit) is a case on all fours with the instant case. In that case one Schnur, as creditor, agreed to make loans to a borrower who assigned to Schnur certain of its accounts receivable as collateral security. Schnur was to advance to the borrower 70% of the face of the accounts. The charge was 3%, later reduced to 2½% upon the net amount advanced by the lender for a period of each 30 days. The borrower collected the accounts and the lender had nothing to do with them except to re-

ceive the list on making the advances and to check them with the invoices and to keep track of the collections and returns of merchandise by having an accountant examine the books of the borrower. The borrower contended that the charges were usurious.

The circuit court, speaking through Judge Rand, said:

"The charges for the services were far in advance of the legal rate of interest and varied from 22½% to 42% per annum. The arrangement was usurious under the New York law and was so held by the court below. The service charges made were for the benefit of Schnur and not for that of the borrowers. Although, under the terms of the written agreement, the lender might have collected the accounts, he did not do so and the services rendered by the auditor and others of his staff were in watching the collateral and otherwise safeguarding his loan. In that respect the services differed from those for which compensation has been allowed by courts to lenders such as for examination of title preliminary to making loans and for actually collecting pledged accounts and for work of attorneys in enforcing collections under agreements. Security Mortgage Co. vs Powers, 278 U. S. 149, 49 S. Ct. 84; 73 L. Ed. 236; In re Gotham Can Co. (C. C. A.) 48 F. 2d, 540, 542. In the case at bar the service charge was continuous from the time when the loan was made and was in fact a charge by the lender only 'for a service he rendered to himself.' Commercial Security Co. vs Holcombe, 262 F. 657 (C. C. A. 5). Agreements to pay more than the legal rate of interest, though in form of services rendered, have been treated as usurious under circumstances such as we find here. Home Bond Co. vs McChesney, 239 U. S. 568, 36 S. Ct. 170, 60 L. Ed. 444; Commercial Security Co. vs Holcombe, 262 F. 657 (C. C. A. 5); Grannis v. Stevens, 216 N. Y. 583, 111 N. E. 262; Quackenbos v. Sayer, 62 N. Y. 344."

That the expenses incurred by the lender in the instant case were only for services it rendered for its own benefit, appears from the evidence in this case. The record discloses that when the plaintiff borrower purchased goods and placed them in the warehouse, Mr. Jordan, employee of the warehouse company, prepared the note for 75% of the tally sheet, had it signed by the borrower and mailed the note to the defendant bank in Toledo, together with the warehouse receipt. The bank did not participate in or oversee the sale

ERRATA:—In line 6 (above) the name "Judge Rand" should read Judge Hand.

440

of the goods but when the plaintiff borrower withdrew any goods for sale from the warehouse the transaction was again handled by an employee of the warehouse company who saw to it that 77½% of the value of the goods released was deposited with a branch of the Cleveland Trust Company to the credit of defendant bank to which a copy of the deposit slip was sent. Whenever any goods in the warehouse were released, the date and number of the release and quantity of goods released were posted on the back of a copy of the warehouse receipt by an employee of the warehouse company. Copies of all releases were sent to the defendant bank in Toledo once a week by the warehouse companny. It thus appears that the accounting in this case was really performed by the warehouse company and not by the defendant bank. All that the bank was required to do was to post payments on the back of the proper notes and the withdrawals on the back of the proper warehouse receipts and to have its books of account record its transactions. Accordingly, an inspection by the defendant bank of all notes on hand with attached warehouse receipts would have disclosed at any time the amount still owing on each note and the goods still in the warehouse. All of the charges of the warehouse company for storage and services were paid, not by the defendant bank, but by the plaintiff borrower. The "services" to be rendered by the bank in the instant case, were of the same character as those rendered by the lender in the Schnur case, supra, where the charges were held to be usurious.

In addition to the cases cited in the Schnur case, see also:
Andrews v. Poe, 30 Md. 486;
Real Estate Trustee v. Lentz, 153 Md. 624;
Joy v. Provident Loan Soc., 37 S. W. 2nd., 254.
Insurance Co. v. Hotel Co., 91 S. W., 2nd, 973;
M. Lowenstein & Sons, Inc., v. Mfg. Co. 300 Fed, 853.

Paragraph 12 of the findings of fact is to the effect that there is no evidence that the financing charges in this case were intended "as a guise or subterfuge for the charging of usurious interest."

There is a seeming confusion in some of the cases as to the place and importance of intent in determining whether charges by a lender are to be considered usurious. However, the cases uniformly hold that where the transaction is in the form of a loan and the charges exceed the interest permitted by law, the loan is held to be usurious without any proof of an intent by the parties to make a usurious loan.

40 O. Jur. 841:

"When the contract on its face imports usury as by an express reservation of more than legal interest there is no room for presumption for the intent is apparent." Williston on Contracts, Vol. 6, page 4807:

"Ignorance of the law is generally no excuse and where a transaction, unmistakably a loan, is made for a rate of interest exceeding that permitted by law, the transaction would appear necessarily usurious."

Restatement of the Law of Contracts, Vol. 2, Note to §526, page 1022:

"The extent to which intent is important, in determining whether a transaction is usurious both in criminal and in civil cases, has caused great differences of statutory interpretation and judicial decisions. Thus, there are many decisions that a wrongiul intent is one of the necessary elements of usury; yet at least in civil cases, it may be doubted whether intent is of any importance, if the facts clearly establish usury and the parties were acting under no mistake."

The cases where the intent may be of importance in determining whether a transaction is usurious, is shown by the following authorities:

Williston on Contracts, Vol. 6, page 4809:

"Intent is chiefly important as characterizing transactions not in the form of loans. The law does not permit parties to evade usury statutes by giving the form of a sale or exchange, bailment or lease to what is really intended as a loan of money, and the validity of such transaction depends on whether the parties were using an apparently legal form as a mere device or in good faith intended to make such a bargain in reality as they did in appearance."

Restatement of the Law of Contracts, Vol. 2, page 1022:

"Where, however, the transaction is not in the form of a loan, a wrongful intent at least of the lender, to use the device of a sale or lease as a means of making what amounts in effect to a loan, is universally held essential in order to make the transaction usurious."

In the instant case, there was no attempt to disguise the charges in the form of a "sale, exchange, bailment or lease." The defendant bank made loans to plaintiff and it is conceded that the interest and charges equalled at least 18%. Accordingly the 12th finding of fact that there was no evidence that the financing charges were intended "as a guise or subterfuge for the charging of usurious interest" is of no importance in this case.

Counsel for defendant bank, in brief and oral argument, contended that Ohio by the Small Loans Act, §8624-62 GC (formerly §6346-5 GC) recognizes the right of a lender of small loans with chattel security to charge more than the legal rate of interest fixed in §8303 GC and that the same right should be given the defendant bank in the instant case.

This argument is clearly fallacious. Collection of more than eight percent on small chattel loans is legalized only by statute and would not be legal were there no statute. If under the common law of the state a lender of small loans on chattel security could have charged more than eight percent to cover unusual expenses, then no Small Loans Act such as §8624-2 GC would have been necessary to validate such charges.

The Ohio Small Loans Act was passed to legalize what otherwise would have been illegal, namely, charging more than eight percent on small loans with chattel security.

It is with some reluctance that a majority of this court has come to the conclusion that the loans in this case were tainted with usury. A number of the leading commercial states such as New York and Illinois have taken the defense of usury from corporations. These statutes have universally been approved by the courts.

In the case of In re International Raw Materials Corporation, 22 Federal 2nd, 920, the Federal Circuit Court of Appeals for the Second Circuit, considered the New York statute and an agreement in which the parties provided for the payment of six percent interest and an additional one and one-half per cent commission per month for a loan. The court said:

"We know of nothing to prevent such an agreement. The New York statute provides that no corporation shall interpose the defense of usury and this has been held in effect to repeal the usury laws so far as the contracts of corporations are concerned. * * *

Corporate contracts to pay more than the statutory rate

of interest have been and we believe should be left to the agreement of the parties and not disturbed in the absence of fraud or duress."

See also: Tennant v. Joerns, 329 Ill. 34; Corozo v. Fed. Finance Co., 149 Md., 223.

Ohio also has a section on usury in the corporation code, §8623-78 GC. This section has a limitation not found in similar statutes of other states and provides that the limitation to §8303 GC (the usury statute)

"shall not apply to any corporate obligation for the payment of money maturing or payable in whole or in part one year or more after the date thereof. * * *"

As all the notes in this case were demand notes, §8623-78 GC has no application to the present case.

If there were no controlling statute we might well inquire in this case, why should the State interpose its arm to protect a corporation from paying an excessive price for the use of money any more than it would do so to protect it from paying an excessive price for goods in the regular course of business? Such a question, however, should be addressed to the General Assembly and not to the courts.

The plaintiff corporation in this case, stands in the same position as any other borrower and in the opinion of the majority of this court, the loans made by the defendant to the plaintiff were usurious under §8303 GC.

Judgment reversed and cause remanded for whatever judgment results after an accounting on the basis that the defendant appellee is entitled to the return of the principal of its loans to the plaintiff-appellant, plus six per cent interest.

SKEEL, PJ, concurs.
LIEGHLEY, J, dissents.

LIEGHLEY, J, dissents for the reason that he finds the sums charged above the legal rate of interest are reasonable and legal service charges.